George Rahsaan BROOKS, Plaintiff,

v.

Officer SHIPMAN, Ralph LaGrotto, James Dudley, Matthew Kerr, E. J. Freeman, Callus Smith, Sgt. McCord and Officer Degenes, Defendants.

Civ. No. 79–695.

United States District Court, W. D. Pennsylvania.

Sept. 15, 1980.

Jere Krakoff, Pittsburgh, Pa., for plaintiff.

Dennis R. Biondo, Asst. County Sol., Pittsburgh, Pa., for defendants.

## MEMORANDUM

MARSH, District Judge.

The Plaintiff George Rahsaan Brooks brought a pro se action in forma pauperis presumably under 42 U.S.C. § 1983 against "Officer Shipman, Ralph LaGrotto, James Dudley, Matthew Kerr, E. J. Freeman, and Callus Smith" seeking:

"(a) A declaratory judgment that the defendants' acts, policies and practices described herein violates plaintiff's rights under the United States Constitution.

"(b) A declaratory judgment that defendants acted under the color of state law and that they used their 'official capacities' to violate plaintiff's constitutional rights.

"(c) Compensatory damages from all defendants and each of them.

"(d) Punitive damages from all defendants and each of them.

"(e) Trial by jury on all issues triable by jury.

"(f) Such other and further relief as this court may deem just, proper and equitable." [1]

Originally, the Defendant Jeffrey Shipman and the other defendants were represented by the County Solicitor and Assistant County Solicitor. Subsequently, in the Court of Common Pleas of Allegheny County, Mr. Shipman was charged and pleaded guilty to the crimes of: (1) official oppression, 18 Pa.C.S. § 5301(2); (2) Terroristic threats, 18 Pa.C.S. § 2706; (3) contraband (marijuana, preludin and dilaudid), 18 Pa. C.S. § 5123 (three counts); and (4) criminal conspiracy, 18 Pa.C.S. § 903(a)(1) (three counts). These charges were based upon complaints by the Allegheny County Sheriff's Office upon information received from officials of the Allegheny County Jail. Because the officials and staff of the Allegheny County Jail were the prosecuting witnesses for the criminal prosecution of Mr. Shipman, leave was granted to the County Solicitor and Assistant County Solicitor to withdraw their appearance for the Defendant Shipman on account of conflicting interests.

On October 12, 1979, pursuant to Plaintiff's affidavit of non-compliance, default was entered by the Clerk against Defendant "Officer Shipman" for failure to comply with an Order of Court compelling discovery.

1. I express my profound appreciation to the Neighborhood Legal Services Association, and especially to Jere Krakoff, Esquire, who agreed to represent the Plaintiff without guarantee or hope of compensation. Attorney Krakoff provided the Plaintiff with extraordinary and efficient trial representation, and presented a detailed, comprehensive, and intelligent brief addressing the legal sufficiency of Plaintiff's many complaints.

The Plaintiff's "Motion to File Leave for Supplemental Complaint or Original Complaint" (item 47 in the Clerk's file) was eliminated at the Plaintiff's request through his counsel at the preliminary pretrial conference. Hence, Sgt. McCord and Officer DeGenes were dismissed from this case as defendants.

At the pretrial conference, it was agreed by the parties to try the case non–jury. After trial, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On April 12, 1979, the Plaintiff George Rahsaan Brooks, a state prisoner, was confined in the Allegheny County Jail in the 22 Range in Cell P. In that range, there were 22 cells, i. e., A through U.

2. Under a jail regulation, prisoners were permitted to write letters to the Sheriff of Allegheny County.[2] Prisoners were permitted to place the letter in a sealed envelope without a stamp and the letter would be hand–delivered to a Sheriff's Deputy the next morning.

3. On April 12, 1979, the Plaintiff, on the third or fourth page of a legal pad, wrote an unsigned letter addressed to Eugene Coon, Allegheny County Sheriff.[3] He placed the legal pad containing the unsigned letter on a table in his cell.

4. A sheet of carbon paper made a copy of the letter on the fourth or fifth page of the legal pad.

5. An envelope addressed to the Sheriff was placed under the legal pad on the table.

6. Defendants Jeffrey Shipman and E. J. Freeman were employed as guards at the Allegheny County Jail working the 4–12 evening shift on April 12, 1979.

7. Defendant Callus Smith was employed as a guard with the rank of corporal and was working the 4–12 evening shift on April 12, 1979.

8. Defendant Ralph LaGrotto was employed as a guard with the rank of lieutenant and was working the 4–12 evening shift on April 12, 1979.

9. Defendant James Dudley occupied the position of deputy warden of the Allegheny County Jail and was working the 4–12 evening shift on April 12, 1979.

10. Sometime prior to 9:00 p. m. on April 12, 1979, Defendant Shipman was informed by Gerald Bogen, another inmate, that Brooks had written a letter to Sheriff Coon, stating that Shipman was bringing hard drugs into the jail.

11. Prior to 9:00 p.m. on April 12, 1979, Corporal Smith and Guard Freeman believed they smelled smoke emanating from Range 22 from food cooking or coffee being brewed.

12. The cells on Range 22 were locked up at 8:30 p. m. and after 9:00 p. m. Corporal Smith ordered a cell search (shakedown) of Range 22.

13. Corporal Smith assigned Guards Freeman and Jazbinsek to make the search and upon request of Guard Shipman to be included, assigned Shipman to the search party.

---

2. Plaintiff's Exhibit 1, Rules and Regulations, page 4:

"In addition to communicating with the Board of Prison Inspectors, there is also a complaint procedure set up with the Sheriff's Department. A complaint may be enclosed in a sealed envelope and turned over to the Shift Commander.

"Every Monday and Friday at 10:00 AM, a Deputy Sheriff will be available in the Deputy Warden's Office to hear complaints that any resident of the Allegheny County Jail may have."

3. Plaintiff's Exhibit 2. The letter was dated April 13, 1979 and read as follows:

George R. Brooks
440 Ross Street
Pittsburgh, Pa. 15219
4–13–79

Eugene Coon
Allegheny County Sherriff [sic]
Dear Sir:

There is an County guard (Mr. Shipman) at this faclity [Sic] that's brining [sic] in "hard drugs".

If something isn't done by your office concerning the above matter, I will contact the Federal authorities.

Yours, etc.

cc:
Hon.

14. Guard Shipman requested permission to be included in the search party because he wanted to see and confiscate the letter written about him by the Plaintiff.

15. Several cells were searched by Guards Freeman, Jazbinsek and Shipman, in addition to Cell E occupied by Bogen and Cell P occupied by Plaintiff. The interiors of some of the cells on Range 22 from C to P were viewed by means of flashlights. Nothing was confiscated from Bogen's cell. Two cans which may have been used for cooking were found in empty unoccupied cells.

16. At Plaintiff's cell, Shipman ordered the Plaintiff to come out. He refused. Again Shipman ordered the Plaintiff to come out and he complied. Jazbinsek stood guard over Plaintiff outside his cell.

17. In Plaintiff's cell, Freeman searched a shelf containing books and found pills which he thought were drugs. Actually the pills were vitamin E tablets prescribed for the Plaintiff by a physician. Freeman also found a jar beside the commode containing wine. He found vegetables, an extension cord, a speaker, $3.01 in change, and a sharp–pointed screwdriver. In an ensuing strip search, a razor blade fell from Plaintiff's undershorts. All these items, except the vitamin pills, were contraband.

18. Shipman participated in the search of Plaintiff's cell and in due course went to the table containing the legal pad and leafed through it. He observed the unsigned letter to the Sheriff. (See Footnote 3) He gave the legal pad to Freeman. Both Freeman and Shipman read the letter.

19. Before and after Freeman and Shipman read the letter in the legal pad, Plaintiff told them he had a right under the first amendment of the United States Constitution to write to the Sheriff and if they read the letter he would sue them. Shipman replied: "Nigga, you don't have any rights." Shipman also threatened to kill Plaintiff if he ever saw him on the street.

20. Plaintiff was taken by the three guards to Deputy Warden Dudley's office. The deputy was busy and he directed that the guards take Plaintiff to a jail administrative office occupied by Mr. Longmore.

21. While in Mr. Longmore's office, Defendants Smith, LaGrotto and Dudley were shown the legal pad by the Defendant Shipman. Corporal Smith and Lieutenant LaGrotto inspected and probably read the letter to the Sheriff.

22. Deputy Warden Dudley had the legal pad in his possession but did not read the letter to the Sheriff.

23. The unsigned letter to the Sheriff and the carbon copy were not censored.

24. Shipman ripped the letter from the legal pad and confiscated it. The carbon copy remained attached to the legal pad.

25. Deputy Warden Dudley returned the legal pad to the Plaintiff in Mr. Longmore's office.

26. Subsequently, the Plaintiff complained to the Warden of the jail and in due course a xeroxed copy of the letter was made from the carbon copy of his letter to the Sheriff.

27. The xeroxed copy of Plaintiff's letter to the Sheriff was delivered to the Sheriff.

28. Prior hostility and possible rivalry existed between Shipman and Brooks, probably over drug transactions in the jail. Shipman intentionally, maliciously, and wantonly violated the Plaintiff's fourth amendment right against illegal search and seizure.

29. Shipman was present at the trial and testified. He was not represented by counsel.

30. No evidence was presented by Plaintiff against the Defendant Matthew Kerr.

## DISCUSSION

As stated in *Price v. Johnson*, 334 U.S. 266 at 285, 68 S.Ct. 1049 at 1060, 92 L.Ed. 1356 (1948):

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

It is unquestioned that searches of the cells occupied by inmates of the County Jail are constitutionally permissible. Such searches represent appropriate security measures.

In *Bell v. Wolfish*, 441 U.S. 520 at 557, 99 S.Ct. 1861 at 1883 (1979), it is stated:

> "[G]iven the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope. [Citation omitted] Assuming, *arguendo*, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that *the room–search rule does not violate the Fourth Amendment.*" [Emphasis supplied]

█ The Plaintiff's privacy rights were not violated by the Defendants Freeman, LaGrotto, Smith and Shipman in reading the Plaintiff's unsigned letter to the Sheriff, found during a valid cell search, on a page contained in a legal pad on a table in Plaintiff's cell. In no way can there be a claim that Plaintiff's mail was interfered with as it would have been had the letter been signed and enclosed in an envelope addressed to the Sheriff of Allegheny County. We think Plaintiff would have retained a right of privacy in a letter enclosed in a sealed envelope addressed to the Sheriff of Allegheny County.

█ As to Defendant Shipman, the matter is different. He intentionally maneuvered himself into becoming a member of the search party for the sole purpose of obtaining the letter he had heard about from Bogen that the Plaintiff had written accusing him of dealing in hard drugs. We think Shipman's intentional search and seizure of the legal pad containing the unsigned letter was unjustified and motivated by a malicious and wanton infringement of Plaintiff's fourth amendment rights against an unreasonable search and seizure. We think Plaintiff had a reasonable expectation of privacy against the deliberate and unwarranted intrusion by Shipman into Plaintiff's cell solely for the purpose of obtaining the letter which he had heard that the Plaintiff had written about him. *Cf. Bonner v. Coughlin*, 517 F.2d 1311, 1316 (7th Cir. 1975).

In our opinion, Shipman is liable for nominal and punitive damages.

## CONCLUSIONS OF LAW

1. The Plaintiff's unsigned letter to the Sheriff and the carbon copy contained in a legal pad on a table in Plaintiff's cell had not reached the status of a confidential communication.

2. The search and seizure by Shipman of the legal pad containing the unsigned letter to the Sheriff and the carbon copy served no legitimate interest of the Allegheny County Jail but only Shipman's personal interest.

3. Shipman's search through Plaintiff's legal pad for the letter containing information about him and his confiscation of that letter amounted to an illegal search and seizure in violation of the fourth amendment to the United States Constitution.

4. Prison guard Freeman, who was authorized to search the Plaintiff's cell and who was handed the Plaintiff's unsigned letter by Shipman and read it, did not violate any of Plaintiff's Constitutional rights.

5. Prison officers LaGrotto and Callus Smith, who, in Mr. Longmore's office, read the unsigned letter seized by Shipman, did not violate any of Plaintiff's Constitutional rights.

6. Deputy Warden Dudley, who did not read the unsigned letter seized by Shipman and who returned the legal pad containing the carbon copy to Plaintiff, did not violate any of Plaintiff's Constitutional rights.

7. There was no evidence that the Defendant Matthew Kerr participated in the search of Plaintiff's cell, or was present in Mr. Longmore's office, or ever saw the Plaintiff's unsigned letter to the Sheriff.

8. Judgment should be entered in favor of the Defendants Freeman, LaGrotto, Smith, Dudley, and Kerr.

9. Judgment should be entered against Defendant Jeffrey Shipman for nominal

damages in the sum of $1.00 and for punitive damages in the sum of $50.00.