

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-17-1997

# Parham v. Johnson

Precedential or Non-Precedential:

Docket
95-3623

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Parham v. Johnson" (1997). *1997 Decisions.* Paper 220.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/220

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 17, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-3623

PAUL LAMONT PARHAM,

        Appellant

v.

MARSHALL JOHNSON, JR., Medical Doctor;
CHARLES J. KOZAKIEQICZ;
TOM FORESTER, Commissioner;
JOSEPH MAZURKIEWICZ, Ph.D.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 90-cv-00726)

Argued: February 14, 1997

Before: COWEN, MCKEE, and JONES,* Circuit Judges.

(Filed: September 17, 1997)

Fred T. Magaziner, Esq. (argued)
Dechert Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

 COUNSEL FOR APPELLANT

_____
*The Honorable Nathaniel R. Jones, Senior Circuit Judge, United States
Court of Appeals for the Sixth Circuit, sitting by designation.

        Vincent A. DeFalice, Esq. (argued)
        DeFalice & Douglas, P.C.
        4th Floor, 816 Fifth Avenue
        Pittsburgh, Pennsylvania 15219

         COUNSEL FOR APPELLEE

OPINION OF THE COURT

JONES, Circuit Judge.

Paul Lamont Parham ("Parham") filed suit against his
prison physician, Dr. Marshall Johnson ("Dr. Johnson"),
claiming that Dr. Johnson was deliberately indifferent to
his medical needs. The magistrate judge found that
Parham's claim may have merit and ordered that counsel
be appointed for Parham pursuant to 28 U.S.C. S 1915.
This order was never adhered to. Two years later, Parham,
still without counsel, petitioned the district court to appoint
him an attorney. The district court acknowledged that
Parham's claim had merit, but denied his request. Parham
was then forced to try his claim pro se. The district court
directed a verdict for Dr. Johnson because Parham failed to
present an expert witness. Parham then filed a timely
appeal and petitioned this court to appoint him counsel.
This court granted his motion for counsel.1

Upon review, we find that the magistrate judge's order
should have been complied with and Parham should have
had counsel below. Accordingly, we reverse and remand.

I.

On November 15, 1989, Parham experienced a high-
pitched ringing noise in his left ear. Parham expressed this
concern to Dr. Johnson and told him that it may be an
actual ringing noise in the prison, but he was unsure. Dr.
Johnson diagnosed Parham's condition as tinnitus.

_____

1. We take this opportunity to note that appellant's court-appointed
counsel did an excellent job in this case, and we appreciate their time
and effort.

Tinnitus is a "subjective noise sensation heard in one or
both ears." Mosby's Medical Dictionary 1559 (Kenneth N.
Anderson ed., 4th ed. 1993). This condition is generally not
diagnosed without a comprehensive diagnosis, Linda M.
Luxon, Tinnitus: Its Causes, Diagnosis, and Treatment, 306
British Med. J. 1490 (1993); yet, Dr. Johnson diagnosed it
after a simple exam.

To treat the tinnitus, Dr. Johnson prescribed Cortisporin
ear drops. Cortisporin is an antibiotic solution for the
treatment of "superficial bacterial infections of the external
auditory canal . . . ." Physicians' Desk Reference ("PDR")
768 (43rd ed. 1989).2 The warnings in the PDR indicate
that Cortisporin "should be used with care when the
integrity of the tympanic membrane is in question because

of the possibility of ototoxicity . . . [and because] [s]tinging and burning have been reported when this drug has gained access to the middle ear." Id. Moreover, the manual says nothing about using Cortisporin for tinnitus. Dr. Johnson never referred to the PDR. In fact, his testimony was in direct contrast to the warnings in the PDR; he testified that if the Cortisporin gets in the inner ear a patient probably would not experience burning and stinging, but may experience dizziness.

Parham returned to Dr. Johnson several times after receiving this prescription and complained of burning and stinging sensations in his ear. Dr. Johnson, however, continued to prescribe Cortisporin. The PDR states that "[t]reatment should not be continued for longer than ten days." PDR at 768 (emphasis added).3 It further provides that if "sensitization or irritation occurs, medication should be discontinued promptly." Id. Dr. Johnson inexplicably continued the treatment for 114 days.

On January 10, 1990, Parham returned to Dr. Johnson because his ear was now oozing with blood and his hearing was becoming impaired. The physician assistant noticed a laceration in Parham's tympanic membrane. Parham

_____

2. The PDR is currently in its 51st edition. We, however, refer to the 43rd
edition because it was the edition available to Dr. Johnson in 1989.

3. Dr. Johnson testified that someone could stay on this medication for more than ten days if there were no adverse side effects. J.A. at 279-80.

requested that he be allowed to see an ear specialist, but Dr. Johnson declined this request and continued treating Parham with the same prescription. Even when Parham lost total hearing in his left ear in February, Dr. Johnson refused to recommend a specialist and continued along the same course.

In January and February 1990, Parham saw Dr. Johnson at least five to six times. Each time Parham requested to be allowed to see an ear specialist, and each time Dr. Johnson declined his request.

Finally, towards the end of February, Dr. Johnson allowed Parham to see an ear specialist. On March 6, 1990, an ear specialist examined Parham and confirmed that he had severe hearing loss in his left ear. The ear specialist recommended a battery of tests.

After these events, Parham decided to file suit against Dr. Johnson and various other defendants.4 Parham then filed five separate motions requesting that counsel be appointed. On January 6, 1992, the magistrate judge entered an order directing the clerk of court to appoint counsel for Parham. Two years later, the clerk still had not appointed counsel.

Parham once again petitioned the district court to appoint counsel for him. The district court recognized that Parham's claim was "arguably meritorious in fact and law," but denied his request for counsel. District Court Order, June 27, 1994. The district court reasoned that since no expert testimony was involved Parham could competently try the case without the assistance of counsel. Id.

Consequently, Parham tried the case pro se to a jury. At the end of the Parham's presentation of the evidence, the district court directed a verdict for Dr. Johnson. The district court stated that a reasonable juror could not find that Dr. Johnson was deliberately indifferent to Parham's medical problem. The district court reasoned that every time Parham sought attention from Dr. Johnson, Dr. Johnson listened to his complaint and responded to it. More importantly, the district court found that Parham did

_____

4. The other defendants were eventually dismissed, and this appeal does not concern any of the defendants other than Dr. Johnson.

4

not present evidence of the causal connection between his pain and suffering and Dr. Johnson's actions. The district court held that in order to present sufficient evidence to withstand a directed verdict, Parham had to present the testimony of an expert witness to show "that your [Parham's] condition was caused by the treatment that Dr. Johnson gave to you or treatment which he failed to reasonably give to you; you haven't produced that kind of evidence." Finally, the district court found that Parham failed to present evidence that his condition was "serious." Ultimately, the district court held that Parham's failure to produce expert testimony led to the necessity of a judgment as a matter of law.

II.

On appeal, Parham claims that the district court improperly denied him counsel after first ordering the clerk of courts to appoint him counsel.5 The Supreme Court has not recognized nor has the court of appeals found a

constitutional right to counsel for civil litigants. See, e.g., Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) ("Appointment of counsel in a civil case is not a constitutional right.") (internal quotations and citations omitted); Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (same); United States v. 30.64 Acres of Land, 795 F.2d 796, 801 (9th Cir. 1986) ("There is normally. . . no constitutional right to counsel in a civil case."). Additionally, civil litigants do not even have a statutory right to appointed counsel. Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Despite the lack of a constitutional right to counsel, section 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel." Such appointment is discretionary, and thus, we review the district court's decision to deny counsel for an abuse of discretion. Tabron, 6 F.3d at 158.

_____

5. Parham also argues that the district court erred in granting the Defendant's motion for judgment as a matter of law. Defendant's counsel agreed at oral argument that this case must be remanded if we find that the district court abused its discretion when it denied Parham counsel. Because we find that the district court erred in not appointing Parham counsel, we need not reach the directed verdict issue.

A.

While all of the circuits agree that appointment of counsel is discretionary, not all of the circuits agree when counsel should be appointed. Several circuits have held that counsel can be appointed only in "exceptional circumstances," but the Second, Third, Seventh, and Eighth Circuits have chosen not to read such a requirement into the statute. Compare United States v. $292,888.04 in United States Currency, 54 F.3d 564, 569 (9th Cir. 1995) ("Under section 1915(d), counsel may be designated only in `exceptional circumstances.' ") (citation omitted); Lavado, 992 F.2d at 605-6 (holding that appointment of counsel is a privilege justified only by exceptional circumstances)6; Fowler, 899 F.2d at 1096 (same); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) ("[A]n indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel."); with Tabron, 6 F.3d at 155 (rejecting "exceptional circumstances" test); Rayes v. Johnson, 969 F.2d 700, 703 (8th Cir. 1992) ("The appointment of counsel should be given serious consideration . . . if the [indigent] plaintiff has not alleged a frivolous or malicious claim and the pleadings state a prima facie case.") (internal quotation and citations omitted); Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir.

1986) (rejecting the "exceptional circumstances" rationale and adopting factors enunciated in Maclin v. Freake, infra); Maclin v. Freake, 650 F.2d 885, 887-88 (7th Cir. 1981) (per curiam) (delineating factors courts should consider in appointing counsel including merits of claim, chance of success, complexity of factual evidence and legal issues,

_____

6. I recognize that I previously authored Lavado in the Sixth Circuit, which endorsed the "exceptional circumstances" test. However, after a thorough review of the rationale behind Judge Becker's decision in Tabron and the cases he followed, I have re-evaluated my position. I now agree that Congress did not intend nor did they state that appointment of counsel is only justified in "exceptional circumstances"; rather, this standard is one of judicial creation. In recanting my previous view, I invoke the statement of Justice Felix Frankfurter, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." Henslee v. Union Planters Bank, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

6

whether conflicting testimony will be presented, and capability of litigant to represent himself ). In fact, this circuit has found "[n]othing in [the] clear language [of section 1915(e)(1)] suggests that an appointment is permissible only in some limited set of circumstances. Nor have we found any indication in the legislative history of the provision to support such a limitation." Tabron, 6 F.3d at 157.

Consequently, the Tabron court delineated various factors to aid district courts in determining when it is proper to appoint counsel for an indigent litigant in a civil case. As a preliminary matter, the plaintiff's claim must have some merit in fact and law. Id.; see also Maclin, 650 F.2d at 887 ("First, the district court should consider the merits of the indigent litigant's claim.").

If the district court determines that the plaintiff 's claim has some merit, then the district court should consider the following factors:

> (1) the plaintiff's ability to present his or her own case;

> (2) the complexity of the legal issues;

> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

    (4) the amount a case is likely to turn on credibility
    determinations;

    (5) whether the case will require the testimony of
    expert witnesses;

    (6) whether the plaintiff can attain and afford counsel
    on his own behalf.

Id. at 155-56, 157 n.5. This list of factors is not exhaustive, but instead should serve as a guidepost for the district courts. Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

B.

In this case, the magistrate judge originally granted Parham's motion for appointment of counsel and ordered that the clerk of courts appoint counsel for Parham. J.A. at 97. After two years, however, nothing occurred. When Parham once again petitioned the district court to appoint him counsel, it denied his request. The district court conceded that Parham's case "is arguably meritorious in fact and law," J.A. at 191 (District Court's Order Denying Counsel June 27, 1994), but concluded that Parham was capable of representing himself, the legal issues were not difficult, the facts were manageable, and there was no indication that expert testimony would be presented. Id. at 191-92. The district court provided no rationale for its conclusions.

This court must determine whether the district court's decision to deny Parham's motion for appointment of counsel was an abuse of discretion. Tabron, 6 F.3d at 158. We agree with the district court that this case is "arguably meritorious." First, Dr. Johnson diagnosed tinnitus without a comprehensive diagnosis, even though a comprehensive diagnosis is recommended. See Luxon, 306 British Med. J. at 1490 ("Diagnosing the cause of tinnitus requires a detailed history and examination."). Second, Dr. Johnson prescribed Cortisporin ear drops. The PDR, however, says nothing about prescribing Cortisporin for tinnitus, see PDR at 768; yet Dr. Johnson never referred to the PDR.

After using the Cortisporin, Parham complained of burning and stinging sensations in his ear, but Dr. Johnson said that Cortisporin would not cause such sensations. The PDR says otherwise--"If sensitization or

irritation occurs, medication should be discontinued promptly." Id. Parham returned to Dr. Johnson various times complaining of burning and stinging sensations, but Dr. Johnson nevertheless continued to prescribe Cortisporin. In fact, he prescribed it for an astronomical time period--114 days--even though the PDR warned against it being used for more than ten days. At one point, Parham came to Dr. Johnson with his ear oozing with blood and requested to see a specialist. Dr. Johnson rejected his request. He sent Parham back to his cell with the same

prescription. Even when Parham lost total hearing in his ear, Dr. Johnson refused to allow him to see a specialist. Finally, after multiple visits, Dr. Johnson allowed Parham to see a specialist, who found that Parham suffered a severe hearing loss. We think these allegations, coupled with the evidence Parham has already established, present a meritorious case. Of course, at trial Parham will still have to show that Dr. Johnson's "[a]cts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). We will leave that determination in the hands of the jury.7

_____

7. We recognize the well-established law in this and virtually every circuit
that actions characterizable as medical malpractice do not rise to the level of "deliberate indifference" under the Eighth Amendment. See, e.g., Estelle v. Gamble, 429 U.S. 97 (1976); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979). In Pierce, we said that "[a]lthough
negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution, failure to provide adequate treatment is a violation of the Eighth Amendment when it results from `deliberate indifference to a prisoner's serious illness or injury.' " 612 F.2d at 762 (quoting Estelle, 429 U.S. at 105)).

We find that the facts here are sufficient that a jury could reasonably find that the care received by Parham while incarcerated rose to the level of Eighth Amendment deliberate indifference, and appointment of counsel was therefore appropriate. In clarifying the appropriate standard, we previously stated in Pierce:

     [T]his test affords considerable latitude to prison medical authorities
     in the diagnosis and treatment of the medical problems of inmate
     patients. Courts will "disavow any attempt to second-guess the
     propriety or adequacy of a particular course of treatment . . .
[which]

remains a question of sound professional judgment." Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Implicit in this deference

to prison medical authorities is the assumption that such informed judgment has, in fact, been made. When, however, prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment, the constitutional standard of Estelle has been violated.

Id. at 762 (emphasis added). Similarly, in White v. Napoleon, we held that "treat[ment] . . . with an inappropriate drug for no valid reason . . . is sufficient to state a claim for deliberate indifference to serious medical needs." 897 F.2d 103, 111 (3d Cir. 1990).

9

Finding that Parham has presented a meritorious case does not conclude our inquiry. We still must perform the requisite six-factor Tabron analysis.

(1) The plaintiff's ability to present his or her own case.

In considering this factor, courts should consider"the plaintiff's education, literacy, prior work experience, and prior litigation experience." Tabron, 6 F.3d at 156. Furthermore, courts must consider whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone, and computer. Id. (citing Rayes, 969 F.2d at 703-04). While these factors will not always be determinative, they should be considered in each meritorious case.

The Defendant argues that Parham's ability to present and respond to motions indicates he was fully capable of presenting his own case. Parham's ability to file and respond to motions does indicate that Parham had some legal knowledge and is literate; however, this fact alone does not conclusively establish that Parham was able to present his own case. In Tabron, the indigent prisoner filed interrogatories and responded to motions, but the court found this inconclusive. See id. at 152. Instead, the Tabron court found that the prisoners lack of legal experience and the complex discovery rules clearly put him at a disadvantage in countering the defendant's discovery tactics. Id. at 158.

In the case at bar, Parham did not appear to have the ability to present an effective case. This seems especially

true considering the fact that Parham could not present a prima facie case below, even though he withstood summary judgment. Furthermore, just a cursory glance at the PDR indicates that if Parham was assisted by counsel his case probably would have reached the jury. This case, like Tabron, involved complex discovery rules that Parham was obviously not able to comprehend. See infra, section 2. These rules prevented Parham from presenting an effective case below.

(2) The complexity of the legal issues.

Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed. See Tabron, 6

10

F.3d at 156; Maclin, 650 F.2d at 889 ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis."). In this case, the ultimate issue appears relatively simple--whether Dr. Johnson was deliberately indifferent to Parham's serious medical needs. A lay person, like Parham, should be able to comprehend what he has to prove when the legal issue is understandable.

However, comprehension alone does not equal ability to translate that understanding into presentation. While the ultimate issue may be comprehensible, courts must still look to the proof going towards the ultimate issue and the discovery issues involved. In this case, Parham was not able to do a simple authentication of the Cortisporin bottle, was not able to take depositions, and was not represented at his own deposition. Parham's inability to introduce the Cortisporin bottle exemplifies the fact that counsel was needed in this case.

During trial, Parham attempted to introduce into evidence the Cortisporin bottle. When he did so, the Defendant objected and claimed that the label on the bottle was inadmissible hearsay. The district court sustained the objection and stated the following:

> That is hearsay. It's inadmissible hearsay. Not only that, documents such as that have to be authenticated. . . . somebody . . . must testify that the document, which is being offered, is, in fact, what it purports to be.

J.A. at 237-238. Parham could not even begin a simple authentication procedure; this authentication procedure

was especially simple since Parham ostensibly could have authenticated the bottle as the one Dr. Johnson prescribed to him. Second, the label probably was not hearsay. Federal Rule of Evidence 801 defines hearsay as a "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Parham could have argued that he did not offer the warning label on the bottle for the "truth of the matter asserted," but instead to show that Dr. Johnson had

11

notice of the warning label. Consequently, the warning label would not be hearsay. 5 Jack B. Weinstein, Weinstein's Federal Evidence S 801.03(1), at 801-11 (2d ed. 1997) ("If . . . Declarant's statement is not offered for its truth, the inability to assess Declarant's credibility is immaterial, and the statement is not hearsay.") (internal footnote omitted). Ultimately, these factors weigh in favor of appointment of counsel.

(3) The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation.

The Tabron court noted that courts should consider a prisoner's predicament in attempting to obtain facts, i.e. the confines of prison. 6 F.3d at 156; see also Rayes, 969 F.2d at 704 (noting the difficulties prisoner plaintiffs with meritorious cases may have with discovery). Further, courts should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules. Tabron, 6 F.3d at 156. A medical malpractice case involves complex facts and medical records that even most lawyers struggle to comprehend. Hence, most of these cases require expert testimony.

In this case, the district court ultimately granted the Defendant's motion for judgment as a matter of law because Parham did not have an expert witness. J.A. at 315. A lawyer conducting discovery would probably have recognized that it was necessary to obtain expert testimony. We recognize that it still may be difficult for appointed counsel to obtain and afford an expert; yet, we believe that appointed counsel will have a much better opportunity to obtain an expert than would an indigent prisoner. Consequently, this factor tips towards appointing counsel.

(4) The amount a case is likely to turn on credibility determinations.

The district court's decision in this case did not appear to

rely upon credibility determinations. While the case ultimately may have relied upon credibility, it is difficult to imagine a case that does not. Thus, when considering this factor, courts should determine whether the case was solely a swearing contest. In this instance, it does not appear to

be a swearing contest. Thus, this factor alone does not encourage the appointment of counsel.

(5) Whether the case will require the testimony of
     expert witnesses.

After the district court's judgment as a matter of law, there is no doubt that Parham needed an expert witness. When the district court was issuing its judgment as a matter of law, it stated "you haven't produced any expert medial opinion, which [in] . . . this case you must." J.A. at 315 (emphasis added) (citing Boring v. Kazkiewicz, 833 F.2d 468, 473 (3d Cir. 1987) (holding that expert testimony is necessary when the seriousness of injury or illness would not be apparent to a lay person)). Thus, according to the district court, Parham had to produce an expert witness.

This finding by the district court is especially startling because when the district court denied Parham's motion for court-appointed counsel, the district court stated that it did not seem likely that expert testimony would be needed in this case. Yet, in dismissing the case, the same district judge cited as a deficiency in Parham's case the lack of expert testimony, which the district judge now deemed essential. It is troublesome that the court could use the lack of expert testimony as a shield to protect its denial of the motion for counsel and then as a sword to slay the indigent plaintiff's case.

Consequently, this factor weighs heavily in favor of appointment of counsel.

(6) Whether the plaintiff can attain and afford
     counsel on his own behalf.

There is no evidence that Parham could have afforded counsel. Furthermore, it appears that he made every effort possible, including six motions, to obtain counsel, but it was to no avail. This factor also weighs heavily in favor of appointment of counsel.

III.

The district court abused its discretion by not appointing

counsel. This is especially true in light of the fact that the

13

magistrate judge ordered that counsel be appointed. Courts, of course, should be aware of the scarcity of counsel willing to accept pro bono appointments. However, where a plaintiff's case appears to have merit and most of the aforementioned factors have been met, courts should make every attempt to obtain counsel. See, e.g., Mallard v. United States District Court, 490 U.S. 296, 310 (1989) ("[I]n a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills pro bono publico is manifest."); Tabron, 6 F.3d at 157 ("Representation of indigent litigants is not only an important responsibility of members of the bar, but it also provides an excellent opportunity for newer attorneys to gain courtroom experience."). The Tabron factors will ensure that courts do not appoint counsel to frivolous cases.

No evidence exists that the court made an attempt to obtain counsel in this case, even after it granted the plaintiff 's motion for appointment of counsel. The decision of the district court was not consistent with the sound exercise of discretion.[8]

Thus, we REVERSE and REMAND this case for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

8. Parham also argues that the court below abused its discretion by not providing him guidance as to how to try his case, how to deal with motions, not explaining the "legal jargon," and etc. We, however, are hesitant to direct a district court how to act at every stage of the proceedings. In this case, the district court could have provided more guidance than it did, but its choice not to provide as much guidance as possible was not an abuse of discretion.

14