**Paul Lamont PARHAM, Plaintiff,**

v.

**Marshall JOHNSON, Jr., Defendant.**

**No. CIV.A. 90–726.**

United States District Court,
W.D. Pennsylvania.

June 10, 1998.

Paul Lamont Parham, Pittsburgh, PA, pro se.

Vincent A. DeFalice, Hewitt McNulty & Hewitt, Pittsburgh, PA, for Defendant.

*OPINION*

DIAMOND, District Judge.

The United States Court of Appeals for the Third Circuit has filed an opinion in the above civil action reversing a ruling by this court and remanding the case for further proceedings consistent with that opinion. *Parham v. Johnson,* 126 F.3d 454 (3d Cir. 1997).

In ruling that this court abused its discretion in a memorandum and order dated June 27, 1994, by which it denied plaintiff's seventh motion for the appointment of counsel, the court of appeals found that a January 6, 1992, order of the magistrate judge to whom this case had been assigned for pretrial procedures which had directed the clerk of court to request counsel for the indigent prisoner plaintiff had never been executed.

The appeals court also found it "especially startling" and "troublesome" that although this court in denying plaintiff's motion for the appointment of counsel had given as one of its reasons that the plaintiff would not "need" expert testimony, "the same district judge" later granted defendant's motion at trial for judgment as a matter of law on the ground that plaintiff had failed to prove his case because he had not produced such expert testimony.

As we demonstrate below, both of these findings are based on inaccurate factual premises which apparently were formed by the court, at least in part, because highly relevant portions of the case record in this court were not included in the appellate court record.

In view of the circumstances peculiar to this matter set forth below, with the excep-

tion of the ministerial act of complying with the mandate of the court of appeals, this member of the court will recuse in this case, because his "impartiality might reasonably be questioned" in the future by counsel or a party. *See* 28 U.S.C. § 455(a).

## Background

During all times relevant to this matter, the plaintiff, Paul Lamont Parham, was a prisoner in the Allegheny County, Pennsylvania, jail where he was incarcerated for the commission of several felonies. During this period, the defendant, Marshall Johnson, Jr., was a physician who provided medical services for prisoners at that jail. The plaintiff brought this action under 42 U.S.C. § 1983 to recover damages from the defendant on the ground that he had subjected the plaintiff to cruel and unusual punishment in violation of plaintiff's Eighth Amendment rights during the course of treating him for a problem he was experiencing with his left ear. The plaintiff's complaint was filed *pro se* on April 30, 1990. He was permitted to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and the case was assigned to a magistrate judge for pretrial procedures. After several *motions by plaintiff for the appointment of counsel were denied*, the case was tried to a jury. At the conclusion of plaintiff's case, the defendant's motion for judgment as a matter of law was granted and plaintiff appealed.

## The Matter of the Appointment of Counsel

On May 23, 1990, the clerk of court received the first of seven motions which plaintiff filed seeking the appointment of counsel. This motion was returned to the plaintiff because it was not in proper form. Thereafter, between June 22, 1990, and September 19, 1991, plaintiff filed five additional motions for appointment of counsel. The magistrate judge denied each of those motions by an order which provided that the motion was being denied without prejudice for reconsid-

eration when the issues in the case became more clearly defined. Plaintiff appealed each of those rulings to this court, and all were affirmed. One ultimately was appealed to the United States Court of Appeals for the Third Circuit, which dismissed it on jurisdictional grounds.

On January 6, 1992, the magistrate judge issued the order which the court of appeals found was never executed. That order provided in its entirety as follows:

> AND NOW, this 6th day of January, 1992;
>
> The Clerk of Court is directed to request an attorney from Allegheny County to represent plaintiff Paul Lamont Parham in the district court and to furnish the attorney with copies of the following, together with any other pleadings requested by the attorney:
>
> 1. Complaint
> 2. Any Amendments to the Complaint
> 3. Answers
> 4. Pretrial Narrative Statements

The court of appeals, obviously disturbed by what it believed to be the failure of this court to obtain compliance with that order, made several references to it in its opinion. The first appears in the first paragraph of the opinion at 126 F.3d 454:

> The magistrate judge found that Parham's claim may have merit and ordered that counsel be appointed for Parham pursuant to 28 U.S.C. § 1915. This order was never adhered to. Two years later, Parham, still without counsel, petitioned the district court to appoint him an attorney. The district court acknowledged that Parham's claim had merit, but denied his requests.[1] Parham was then forced to try his claim *pro se*. The district court directed a verdict for Dr. Johnson because Parham failed to present an expert witness....
>
> Upon review, we find that the magistrate judge's order should have been com-

---

1. It should be noted that this court simply found in its memorandum and order of June 27, 1994, that "plaintiff's claim [was] *arguably* meritorious in fact and law, *Tabron*, 6 F.3d at 155." (emphasis added). In fact, ten months before this case went to trial this court expressed serious reserva-

tion as to the actual merits of plaintiff's claim against defendant Johnson. *See* The court's statements in this regard made at the Pretrial Conference held on January 24, 1995, *infra*, at pp. 10–12.

plied with and Parham should have had counsel below. Accordingly, we reverse and remand.

Again at 126 F.3d at 456, the court states:

On January 6, 1992, the magistrate judge entered an order directing the clerk of court to appoint counsel for Parham. Two years later, the clerk still had not appointed counsel.

At 126 F.3d at 458, the court notes:

In this case, the magistrate judge originally granted Parham's motion for appointment of counsel and ordered that the clerk of courts (sic) appoint counsel for Parham. J.A. at 97. After two years, however, nothing occurred.

And finally at 126 F.3d 461 the court rules:

*No evidence exists that the court made an attempt to obtain counsel* in this case, even after it granted the plaintiff's motion for appointment of counsel. The decision of the district court was not consistent with the sound exercise of discretion. (emphasis added).

Thus, we *REVERSE* and *REMAND* this case for further proceedings consistent with this opinion.

Contrary to the foregoing, but unfortunately unbeknownst to the court of appeals, the magistrate judge's order of January 6, 1992, did not remain unexecuted for two years. In fact, it was complied with promptly by the clerk of this court and was executed fully by April 14, 1992, within approximately three months of its entry.

The file in this case contains two letters from Jere Krakoff, attorney at law, to Magistrate Judge Ila Jeanne Sensenich, the magistrate judge who issued the "appointment" order. The first letter, dated March 26, 1992, states:

Re: *Parham v. Johnson*

Dear Judge Sensenich:

This will confirm that Mike Antol (of Neighborhood Legal Services Association) and I are in the process of evaluating this case to determine whether or not to represent Mr. Parham. We will have to obtain some additional information before reach-

ing a decision. This process might require a few weeks to complete.

I expect to communicate our decision by the third week of April.

Yours truly,

Jere Krakoff

The second letter from attorney Krakoff to the magistrate judge is dated April 14, 1992, and it states:

Re: *Parham v. Johnson*

Dear Judge Sensenich:

Mike Antol and I have decided not to represent Mr. Parham in the above case. I have informed Mr. Parham of that fact in a separate letter today.

Sincerely,

Jere Krakoff

In addition to the statement in the body of the April 14 letter, the typist's notes indicate that copies of both letters were sent to the plaintiff. Thus, the record reveals that within three months of its entry the magistrate judge's order to the clerk to request an attorney from Allegheny County to represent plaintiff had been executed completely, and *that plaintiff knew it.*

While attorney Krakoff's letters to the magistrate judge were not contemporaneously filed, they subsequently were made matters of record in this case during a pretrial/settlement conference held by this member of the court on January 25, 1995. That conference was attended by plaintiff and counsel for the defendant/appellee, and although a docket entry of January 30, 1995, indicates that it also was attended by a court reporter, the proceedings of the conference were never transcribed or otherwise made a part of the record on appeal.

The court has now had those proceedings transcribed and filed. At pages 7 and 8 of the transcript of the January 25, 1995, conference, this court referred to the efforts which had been made to obtain counsel for the plaintiff. There the court, addressing the plaintiff, stated in part:

Now, you had requested that the court appoint an attorney for you.... [W]hen the matter was being processed by Magistrate Judge Sensenich, she had contacted a

Jere Krakoff, who is a very competent, well-known respected civil rights attorney.[2] In fact ... I had appointed him when I was Chief Judge of this Court to a special committee which I had appointed to look into civil rights complaints of prisoners and to find some kind of a process whereby those rights—those cases could be expedited and processed ....

Jere Krakoff reviewed the file in this case, he and one of his associates, and wrote a letter to Magistrate Judge Sensenich in March of '92, in April of ... ['92].

The court went on to read into the record the two letters set forth below. And after advising Mr. Parham that:

[u]nder the Civil Rights Act of 1864— which is what you're proceeding under—if an attorney is successful in representing a civil rights claim, that attorney may recover substantial attorney's fees over and above any recovery[,]

the court concluded: "These attorneys have examined your case, Mr. Parham, and they decided they weren't going to take it on."

Thus, the record reveals that the magistrate judge's order of January 6, 1992, had been executed promptly, that the court had requested a highly qualified civil rights attorney to represent plaintiff, that after this attorney and another noted civil rights attorney had evaluated the case they declined the court's request, and that plaintiff was aware of those facts.[3]

We turn now to:

### The Matter of the Expert Witness

On May 16, 1994, the magistrate judge returned the case to this court for all future proceedings. The following day plaintiff filed his seventh motion for appointment of counsel. As indicated earlier, that motion was denied on June 27, 1994. In denying this motion, the court stated, *inter alia*, "Finally, there is no indication that expert testimony *will be presented.*" (emphasis added). The court in *Parham* initially correctly quoted this court's memorandum and order denying counsel, when it stated that this court "concluded that Parham was capable of representing himself, the legal issues were not difficult, the facts were manageable, and there was no indication that expert testimony *would be presented.*" (emphasis added). 126 F.3d at 458. However, later in its opinion the court notes that:

after the district court's judgment as a matter of law, [referring to this court's ruling at the conclusion of plaintiff's case at trial granting the defendant's motion under Rule 50(a), Fed.R.Civ.P., for judgment as a matter of law] there is no doubt that Parham needed an expert witness. When the district court was issuing its judgment as a matter of law, it stated, 'You haven't produced any expert medial (sic) opinion, which [in] ... this case you *must.*'

---

2. Jere Krakoff's experience and reputation in handling prisoner civil rights cases is well documented in this jurisdiction. *See, e .g.,Owens–El v. Robinson,* 442 F.Supp. 1368 (W.D.Pa.1978) (initiating litigation as member of Neighborhood Legal Services on behalf of inmates of Allegheny County which ultimately resulted in a new facility) and numerous subsequent proceedings; *Brooks v. Shipman,* 503 F.Supp. 40, 41 n. 1 (W.D.Pa.1980) (Marsh, J.) (expressing "profound appreciation" for "extraordinary and efficient" representation of prisoner in successfully litigating Fourth Amendment claim); *Tillery v. Owens,* 907 F.2d 418 (3d Cir.1990) (successfully litigating Eighth Amendment challenge to the policy of double-celling at the State Correctional Institution at Pittsburgh); *Doe v. Sparks,* 733 F.Supp. 227 (W.D.Pa.1990) (challenging the visitation policy for prisoners at the Blair County Jail as violative of equal protection).

3. It should be noted that these attorneys could not be compelled to represent the plaintiff, for, as the United States Court of Appeals for the Third Circuit stated in *Tabron v. Grace,* 6 F.3d 147, 153 n. 1 (3d Cir.1993), "[i]n *Mallard v. United States District Court for the S. Dist. of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)), the Supreme Court held that § 1915(d) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being 'request.' '

Nor, as the *Tabron* court also noted, was this an unusual occurrence:

We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

*Tabron,* 6 F.3d at 157 (footnote 7 omitted).

J.A. at 315 (emphasis added) (*citing Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987) .... Thus, according to the district court, Parham had to produce an expert witness.

The circuit then goes on to opine:

This finding by the district court is especially startling because when the district court denied Parham's motion for court-appointed counsel, the district court stated that it did not seem likely that expert testimony would be *needed* in this case. Yet, in dismissing the case, the same district judge cited as a deficiency in Parham's case the lack of expert testimony, which the district judge *now deemed essential.* It is troublesome that the court could use the lack of expert testimony as a shield to protect its denial of the motion for counsel and then as a sword to slay the indigent plaintiff's case.

*Consequently, this factor weighs heavily in favor of appointment of counsel.*

*Parham,* 126 F.3d at 460 (emphasis supplied).

As indicated above, however, this court did not state that expert testimony would not *be needed;* it stated only that there was "no indication that expert testimony [would] *be presented.*"

In addition, and more to the point of whether this court, in effect, deceitfully, used the expert witness testimony issue both as a "shield" and as a "sword", however, is the fact that at the pretrial/settlement conference of January 25, 1995, *ten months before the trial* in this case, the court advised the plaintiff at some length that he would have to have the testimony of an expert to prove at least *two of the essential elements* of his case; to-wit, that the defendant was guilty of *deliberate indifference* in providing or failing to provide medical care to the plaintiff *and* that this *caused* the injuries for which plaintiff was seeking to recover damages.

At the January 25, 1995, pretrial/settlement conference previously referred to herein, after summarizing the background of the case, the court addressed the plaintiff and stated:

[T]he plaintiff brought an action under 42 U.S.C. Section 1983 contending that the doctor violated the plaintiff's constitutional rights by inflicting cruel and unusual punishment ....

The problem from the plaintiff's point of view is that this is not a malpractice suit. You do not recover simply by proving, if you can do so, that the defendant doctor's medical attention fell below a reasonable standard. *You have to prove that the defendant acted with deliberate indifference* .... And this means that the doctor had virtually intentionally to have inflicted this pain knowing that what he was doing was improper.

*In order to do that, you have to produce something other than your opinion. Mr. Parham. You have to prove some—produce some expert testimony that the doctor, at the very least, acted negligently or incompetently in providing the treatment which the doctor provided.* He certainly wasn't—he didn't ignore your complaints, he was attempting to do something. Your own record indicates that. That he prescribed the ear drops, that he saw you a number of times between November, December and January, February 1989 and '90, and that he was attempting to do something for your condition ....

The defendant's motion for summary judgment was denied by Magistrate Judge Sensenich and so the case at this point is ripe for trial. But I must tell you, that it is going to be very close as to whether or not you get to the jury at all in that case.

So, on the one hand, I think that in the Register case, the plaintiff seems to me to have a very plausible case, and if he establishes that he was assaulted by a guard at that institution to the point that ribs were fractured, then $15,000, I would think, would be a low figure for the plaintiff to recover. That's a very serious matter, in my judgment. Establishing it is another matter. The case would go to the jury, the jury would have to decide.[4]

---

4. The Register case to which the court referred was a separate § 1983 action brought by Parham against one Thomas Register, a guard who allegedly assaulted plaintiff while he was a prisoner at

On the other hand, I have to be frank to tell you that it's questionable whether your other case [the Johnson case] would even get to the jury. It might. And what would happen after that, obviously I can't say. . . .

In one sense, the hearing loss is more serious maybe than the broken ribs, but the seriousness of your condition isn't really what controls, it is the *seriousness of the conduct* that caused your condition. . . . .

[S]imply because you didn't get a good medical result in a situation where the doctors—where the record does not establish that the doctor did anything wrong, is—even though your condition is serious, that doesn't entitle you to anything.

. . . *[I]n order to prove, among other things, that your hearing loss was caused by the treatment, good or bad, you have to have an expert,* I think, I'm quite sure, to establish that. You can't—you're not competent as a witness to say that the reason I lost my hearing was because of the treatment that I received by the doctor. Your hearing loss might have been for—gone for any number of other reasons that would have nothing to do with the doctor and would have occurred notwithstanding the best medical attention that you could have had.

But the point of it is that you have the burden of proving that the treatment *caused* your problem *and you can't, I think, meet that burden without having some expert who would be willing to testify to that effect.* And that's where that case is.

SCI Pittsburgh. That case was consolidated for trial with plaintiff's action against Dr. Johnson. The statement quoted above was made by the court in connection with settlement negotiations in which the parties were engaged. Plaintiff had made a settlement demand of $15,000; the defendant rejected it, and the case was submitted to the consolidated jury, which returned a verdict for the defendant. That case was not appealed.

5. In this regard, it should be noted that this court had no more authority to appoint an expert witness at government expense for this indigent *pro se* plaintiff proceeding under 28 U.S.C. § 1915(d) than, as indicated in footnote 2, *supra,* it had to require counsel to represent him. As the court stated in *Boring v. Kozakiewicz,* 833 F.2d 468 (3d Cir.1987), in affirming the district court's refusal

Transcript of Pretrial Conference at pp. 6–11 (emphasis and footnote added).

Thus, it is clear that not only did this court not mislead the indigent *pro se* plaintiff into thinking that he did not need an expert witness to prove his case at trial, but on the contrary told him in unmistakable terms well in advance of trial that such a witness was essential to his case.[5]

It has not been the purpose of this opinion simply to grouse about an opinion of our court of appeals reversing a ruling by this court and criticizing its handling of a matter before it. That is the prerogative of the appellate court and this court in no way questions or challenges it. However, where that prerogative is exercised under the circumstances and in the manner set forth above, it leaves this member of the court with no choice but to disqualify himself because it renders the case a "proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

Appropriate orders will be entered reinstating plaintiff's claim against the defendant Johnson, and directing the clerk of court to request counsel, other than attorneys Jere Krakoff and Michael Antol, to represent plaintiff and to reassign this case to another member of this court for all further proceedings.

to appoint an expert at government expense in a similar case:

> The plaintiffs' [former pretrial detainees] dilemma in being unable to proceed in this damage suit because of the inability to pay for expert witnesses does not differ from that of nonprisoner claimants who face similar problems. Nonprisoners often resolve that difficulty through contingent fee retainers with provisions for arranging expert testimony. By seeking government funding in this case, plaintiffs are in effect asking for better treatment than their fellow-citizens who have not been incarcerated but who have at least equal claims for damages.

*Id.* at 474. *See also Tabron v. Grace,* 6 F.3d at 159.