**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2242
_____

DARIEN HOUSER,
                    Appellant
v.

SUPERINTENDENT LOUIS S. FOLINO; DR. JIN, MD.;
PA DIGGS; LUCAS-ANTONICH

_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(D.C. Civil No. 2-10-cv-00416)
District Judge:  Honorable Donetta W. Ambrose

Argued:  September 25, 2018

Before:  AMBRO, CHAGARES, and GREENAWAY, JR.,
Circuit Judges.

(Filed: June 19, 2019)


Teresa Akkara **[ARGUED]**

University of Pennsylvania School of Law
3400 Chestnut Street
Philadelphia, PA 19104

Roger A. Dixon
Joseph K. Hetrick
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

     Counsel for Appellant

Sean A. Kirkpatrick **[ARGUED]**
Howard G. Hopkirk
Office of Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

     Counsel for Appellee Superintendent Louis Folino

John J. Hatzell, Jr. **[ARGUED]**
Haddix and Associates
1650 Market Street
Suite 3800
Philadelphia, PA 19103

     Counsel for Appellee Dr. Jin, MD

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Darien Houser filed a pro se lawsuit against prison officials for deliberate indifference to his medical needs. The District Court appointed him counsel. When counsel withdrew, however, the District Court declined to appoint a new lawyer. Houser tried the case himself and lost. He now argues that the District Court abused its discretion by denying him new counsel without considering the six factors that this Court set forth to guide district courts in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993). We hold that Tabron applies to successive motions to appoint counsel, but that denying Houser new counsel was not an abuse of discretion. Accordingly, we will affirm.

I.

Houser is a Pennsylvania state prisoner. In 2010, he initiated this action under 42 U.S.C. § 1983 against the prison's superintendent, Louis S. Folino, and its medical director, Dr. Jin, claiming that they had been deliberately indifferent to his medical needs.

Houser first requested appointed counsel in 2012. The District Court considered the request, but concluded that it was too early to tell whether the claims had sufficient merit and complexity to justify appointing counsel. The court therefore denied the request without prejudice.

Discovery proceeded, and the defendants moved for summary judgment in 2013. Houser prepared and filed opposition papers to the motions for summary judgment, still pro se. In May 2014, while the summary judgment motions

were pending, he again moved to appoint counsel. The District Court denied the defendants' motions for summary judgment in July 2014, and, on the same day, the Magistrate Judge granted Houser's motion to appoint counsel without opinion.

The District Court conducted a search to secure pro bono counsel for Houser. Two lawyers declined to represent Houser before, in mid-November 2014, the law firm Reed Smith LLP agreed. After it assumed Houser's representation, the parties conducted additional discovery (including new interrogatories, expert reports, and depositions). Reed Smith would go on to devote over one thousand hours to discovery and trial preparation and merits our appreciation for its efforts.

In August 2015, however, Reed Smith moved to withdraw as Houser's counsel. The firm cited fundamental disagreements with Houser on strategy, a complete breakdown in communication, and an irremediably broken attorney–client relationship. The District Court held a conference on the motion, which Houser attended by video. Reed Smith lawyers explained that Houser refused their calls and jeopardized the attorney–client privilege by forwarding their letters to the court. Houser responded that he had not been uncommunicative, but he did disagree with Reed Smith about how to litigate the case. Specifically, Reed Smith had asked Houser to sign an agreement that set forth its trial strategy (such as the claims to advance, witnesses to call, and so on), which Houser believed would "dismantle" his case.

The District Court explained to Houser that it could not dictate his lawyers' trial strategy and informed him what would happen if they withdrew. The court advised:

4

[Lawyers at Reed Smith] were the third attorneys requested to take the case. We're not going to ask anyone else to do this. You should understand that if they are out of this case, and they may be, that you will proceed. And quite frankly, you proceeded and handled the case on your own for four years. You are intimately aware of what the case is about. They have done all the hard work in terms of getting it ready, getting the expert, doing the depositions. They have done all that for you. So, that is what is going to happen here. I'm going to make a decision about how you're going to proceed, or you're going to proceed on your own, if you tell me that's what you want me to do.

. . . .

I'm asking you, what do you want to do? Do you want to go to trial with these people representing you, these attorneys, or do you want to go to trial and represent yourself?

And as I said, you know a lot about this case. I'm not suggesting that you should, but this is what you have to think about.

Joint Appendix ("JA") 115–17.

Houser never gave a straightforward answer as to whether he consented to Reed Smith's withdrawal, but he did maintain that he would not agree to its trial strategy. Based on this fundamental disagreement, the District Court granted Reed Smith's motion to withdraw. It explained to Houser, "As I said

5

earlier, I think you know more about this case than anyone. You know what is in your head about it. You know what happened to you. You have progressed with it to this point." JA 137–38.

Houser asked the court to put him back on the "appointment of counsel" list and to stay the case for six months while he sought pro bono counsel on his own. The District Court denied this request, stating:

> Well, you don't get to pick the attorney, I have to tell you. That's not how it works. This is a civil case. It's not a criminal case. You don't get to pick the attorney, unless you want to pay for one, and then, of course you can.
>
> . . . .
>
> Mr. Houser will be proceeding pro se. He has asked me to appoint counsel, and I don't think that's going to happen, because as I said, Reed Smith was the third counsel under the pro bono program that was asked to review and accept the case, and that's as far as we're going to go.
>
> . . . .
>
> As I indicated, two attorneys reviewed this case and refused to take it before Reed Smith reviewed it and agreed to take it. So we're not going to pursue counsel through the pro bono program anymore, but you certainly can pursue it any way you'd like. But at this point there's no continuance of the trial date.

. . . .

> [T]his case is already five years old, and it can't be much older, because it should be litigated, it absolutely should. And you have a lot of information. And you have pursued this case on your own, quite frankly, for four years, over four years. You have filed the complaint, and you have done that. So, these are things that you have to make decisions about.

JA 139–44. The court ordered all documents sent to Houser (including deposition transcripts, medical records, and expert reports), and pushed the trial to December 2015.

In October 2015, Houser filed a written motion to appoint counsel or to reconsider the oral denial of his request for counsel at the August conference. The District Court denied this motion the next day by text-only electronic order and without explanation.

Houser's trial took place the first week of December. The jury returned a verdict for the defendants, finding that Houser had not proved a serious medical need.

Houser moved for a new trial based on the District Court's denial of his motion to appoint counsel (and other reasons not on appeal). The District Court denied his motion. It reiterated that, "as a civil litigant, Plaintiff does not have a right to any counsel, let alone counsel of his choice," and that it had "expended considerable effort and experienced significant difficulty finding counsel willing to represent Plaintiff in the first instance." JA 23. The court also observed

7

that "Reed Smith is a prestigious law firm" that "represented Plaintiff ably and effectively" and that "Plaintiff demonstrated a command of the facts and the law and competently presented his own case" at trial. JA 23. It concluded that it was "well within" its discretion to deny Houser new counsel. JA 23, 30.

Houser moved to reconsider. He argued for the first time that he "met all prongs under Tabron v. Grace for appointment of counsel." JA 780. Specifically, he argued that his claims had merit and involved "medical issues that were complex including requiring an expert" and the "conflicting testimony of multiple witness[es]." JA 780. Accordingly, Houser contended that it was an abuse of discretion not to appoint new counsel. The District Court denied the motion to reconsider, concluding that Houser "largely restate[d] arguments he asserted in prior motions" and identified no "intervening change in law, the availability of new evidence, or any clear error or manifest injustice" to warrant reconsideration. JA 15.

Houser timely appealed.[1]

## II.

The District Court had jurisdiction over Houser's § 1983 claims under 28 U.S.C. §§ 1331 and 1343, and we have

---

[1] Houser's attorneys on appeal are appearing pro bono. We express our gratitude to those attorneys for accepting this matter pro bono and for the quality of their representation of their client. Lawyers who act pro bono fulfill the highest service that members of the bar can offer to indigent parties and to the legal profession.

jurisdiction over this appeal under 28 U.S.C. § 1291.  We review the denial of a motion to appoint counsel for abuse of discretion.  See, e.g., Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002).

III.

Civil litigants have no constitutional or statutory right to appointed counsel.  Id.  Title 28, § 1915 provides, however, that "[t]he court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).

In Tabron v. Grace, we "provided district courts with a set of general standards for appointing counsel."  6 F.3d at 155.  We outlined a two-step process.  First, "the district court must consider as a threshold matter the merits of the plaintiff's claim."  Id.  Second, "[i]f the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel."  Id.  Those factors include:

> (1) the plaintiff's ability to present his or her own case;
>
> (2) the complexity of the legal issues;
>
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>
> (4) the amount a case is likely to turn on credibility determinations;

9

(5) whether the case will require the testimony of expert witnesses; [and]

(6) whether the plaintiff can attain and afford counsel on his own behalf.

Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron, 6 F.3d at 155–56, 157 n.5).

This appeal presents two questions: (1) whether the Tabron factors guide district courts' discretion regarding successive requests for counsel or only the initial request, and (2) whether the District Court abused its discretion by denying Houser new counsel.

A.

We first consider what role Tabron plays in successive requests for counsel. We hold that Tabron applies to successive requests for counsel the same as it applies to initial requests for counsel — as a guidepost for the district courts in their exercise of broad discretion under 28 U.S.C. § 1915(e)(1).

The parties stake out the extreme positions on this question. Houser argues not only that Tabron applies to successive requests for counsel, but also that district courts must appoint new counsel if initial appointed counsel withdraws. The defendants, on the other hand, argue that Tabron does not apply at all to successive requests for counsel and therefore district courts can summarily deny new counsel once litigants squander their first chance. Our precedents, however, do not support either extreme.

We begin with Tabron itself. We held there that Congress has "give[n] district courts broad discretion to request an attorney to represent an indigent civil litigant." 6 F.3d at 153. We thus rejected contrary precedents from our sister Courts of Appeals that courts should appoint counsel only in "exceptional circumstances," concluding that neither the statute's "clear language" nor its "legislative history" supported this requirement. Id. at 153–55. Given "this opportunity" to consider what showing was required, we also "provided district courts with a set of general standards for appointing counsel." Id. at 155. Then we offered the two-step process detailed above. The first step, a threshold review for arguable merit, we described as mandatory: courts "must consider . . . the merits of the plaintiff's claim." Id. In other words, it would be an abuse of discretion to appoint counsel to advance claims with no arguable merit in law and fact. Under the second step, the district courts "should then consider a number of additional factors that bear on the need for appointed counsel." Id. (emphasis added). We then described some relevant considerations "to guide district courts." Id. at 157. But that list of "general standards" was "not meant to be exhaustive." Id. at 155, 157. We emphasized that "appointment of counsel remains a matter of discretion." Id. at 157. Nothing in Tabron suggests that successive requests for counsel should be treated differently.

Our later precedents followed suit. In Parham, we reiterated that "appointment of counsel is discretionary." 126 F.3d at 457. Although we "delineated various factors to aid district courts in determining when it is proper to appoint counsel" in Tabron, we advised that "[t]his list of factors is not exhaustive, but instead should serve as a guidepost for the district courts." Id. at 457–58. Similarly, in Montgomery we

11

explained that "Congress has granted district courts statutory authority to request appointed counsel," thereby "affording district courts broad discretion to determine whether appointment of counsel in a civil case would be appropriate." 294 F.3d at 498 (quotation marks omitted). We simply "developed a list of criteria to aid the district courts" in exercising this discretion. Id. Again, nothing in our precedents distinguishes first requests for counsel from later requests. Tabron's guidance applies just the same.

B.

We now turn to the District Court's decision to deny Houser new counsel. Two considerations drove that decision. First, the District Court thought that Houser could ably represent himself — the first Tabron factor, although it did not name that factor specifically. Second, the District Court thought that the scarcity of pro bono resources weighed against appointing Houser another lawyer. We agree on both fronts and conclude that denying new counsel was not an abuse of discretion, even without consideration of any other Tabron factors.[2]

1.

---

[2] Defendant Folino also argues that Houser's claims against him fail Tabron's threshold review for arguable merit because nonmedical prison officials cannot be deliberately indifferent to the medical needs of prisoners being treated by prison medical staff (an argument the District Court rejected at summary judgment and again at trial). Since we affirm on other grounds, we do not reach this argument.

12

The District Court concluded that Houser could ably represent himself at trial. At the withdrawal hearing, it noted that Houser had "proceeded and handled the case on [his] own for four years" before it first appointed counsel. JA 116. It opined that he knew "more about this case than anyone" and noted that he had "progressed with it to this point." JA 137–38; see also JA 144 ("And you have a lot of information. And you have pursued this case on your own, quite frankly, for four years, over four years."). Indeed, Houser successfully persuaded the court to deny summary judgment while acting pro se. The court also noted that Reed Smith had "done all the hard work in terms of getting [the case] ready [for trial], getting the expert, doing the depositions. They have done all that for you." JA 116.

This analysis corresponds with the first Tabron factor: Houser's ability to present his own case. This factor is "[p]erhaps the most significant of Tabron's post-threshold factors." Montgomery, 294 F.3d at 501. We have suggested that, under this factor, courts "should consider 'the plaintiff's education, literacy, prior work experience, and prior litigation experience'" and "must consider whether the plaintiff has access to necessary resources." Parham, 126 F.3d at 459 (quoting Tabron, 6 F.3d at 156). And a "sophisticated 'jailhouse lawyer'" is less likely to warrant appointed counsel than a litigant bringing his "first and only claim . . . since being incarcerated." Montgomery, 294 F.3d at 502. A litigant's "ability to file and respond to motions" in particular, we have explained, "does indicate . . . some legal knowledge." Parham, 126 F.3d at 459. But "this fact alone does not conclusively establish" that a litigant is "able to present his own case." Id. We especially hesitate to rely on an indigent litigant's ability

13

to file written submissions when "complex discovery rules" still create a tactical disadvantage.  Id.; see also Tabron, 6 F.3d at 152, 158; Montgomery, 294 F.3d at 501–02.

We agree with the District Court that Houser's ability to present his own case argues against appointing new counsel. Houser's litigation experience was extensive.  In addition to prosecuting this case for four years before receiving counsel, Houser was litigating four other cases pro se at the time.  And when he asked for new counsel in this case, there was no further discovery to conduct.  The concerns arising in other cases — a pro se litigant's susceptibility to discovery tactics, technical rulings hindering factual investigations, complex and incomprehensible discovery rules — were not in play here. That Houser needed to review Reed Smith's extensive work does not undermine the conclusion that its work ultimately helped him.  And the District Court observed that Houser did competently present his case at trial.  Certainly the District Court could have considered more — Houser's "education" and "prior work experience," for example, which we have instructed should be "considered in each meritorious case." Parham, 126 F.3d at 459.  But on balance, the District Court acted within its discretion to conclude that Houser's litigation experience, combined with Reed Smith's yearlong contribution, allowed him to try his case himself.

2.

The District Court also relied on its difficulty finding counsel for Houser the first time.  It explained that two attorneys had reviewed the case and refused to take it before Reed Smith agreed.  The court later added that a "prestigious law firm" had represented Houser "ably and effectively" and that the court had "expended considerable effort and

14

experienced significant difficulty finding counsel willing to represent Plaintiff in the first instance." JA 23.

The scarcity of pro bono counsel is important, even if it is not among the delineated Tabron factors. In Tabron, we "emphasize[d] that volunteer lawyer time is extremely valuable" and "[h]ence, district courts should not request counsel under [§ 1915(e)(1)] indiscriminately." 6 F.3d at 157. We also acknowledged "the indignities that some lawyers have been subjected to by certain litigants" and expressed our "trust that district judges will be sensitive to such problems in making discretionary decisions in this area." Id. at 157 n.7. We have therefore cautioned that, "[i]n addition" to weighing the Tabron factors, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity." Montgomery, 294 F.3d at 499.

We agree that the concern for scarce pro bono resources cuts against appointing Houser new counsel. After two lawyers reviewed and declined his case, Houser received more than one thousand hours of pro bono assistance from a well-regarded law firm, as well as a publicly compensated medical expert. We recognize that these efforts might have helped to tempt new counsel, who would have picked up a far more trial-ready case than Reed Smith did. Certainly the District Court could have asked. But, on the whole, its conclusion was within its broad discretion.

3.

The District Court did not review any other Tabron factors before concluding that Houser should not receive new counsel because, following a year's worth of pro bono assistance, he had sufficiently taxed scarce pro bono resources

15

and could reasonably try the case himself. It did not need to. We have always emphasized that the <u>Tabron</u> factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress. They are not exhaustive, nor are they each always essential. For example, the District Court was not required mechanically to consider whether Houser's claims were "likely to require extensive discovery and compliance with complex discovery rules" or would "require testimony from expert witnesses" when Reed Smith had already completed discovery and arranged for an expert at the time when Houser requested new counsel. <u>Tabron</u>, 6 F.3d at 156. District courts should consider the <u>Tabron</u> guideposts that may be relevant to any particular request for counsel, including successive requests, at the time and stage of litigation that the request is made. And district courts must, of course, explain their reasoning with enough detail to permit appellate review for abuse of discretion. <u>See id.</u> at 158–59.

Here, based on what the District Court did consider, we cannot conclude that it abused its broad discretion under 28 U.S.C. § 1915(e)(1) to deny Houser new counsel.

## IV.

For these reasons, we will affirm the District Court's order denying Houser's motion to appoint counsel and, accordingly, its orders denying Houser's motions for a new trial and for reconsideration.

16