**James R. GUNSON, Plaintiff,**

v.

**Kay Coles JAMES, Director, United States Office of Personnel Management, Long Term Care Partners, LLC, John Hancock Life Insurance Co. and Metropolitan Life Insurance Co., Defendants.**

**Civil Action No. 04–3341 (FLW).**

United States District Court,
D. New Jersey.

Jan. 12, 2005.

James R. Gunson, Westmont, NJ, pro se.

Peter L. Frattarelli, Archer & Greiner, P.C., Haddonfield, NJ, for Defendants Long Term Care Partners, LLC, John Hancock Life Insurance Co., and Metropolitan Life Insurance Co.

Louis J. Bizzarri, Office of the United States Attorney, Camden, NJ, for Defendant Kay Coles James.

## OPINION

WOLFSON, District Judge.

This matter has come before the Court upon: 1) the three motions for summary judgment filed by James R. Gunson, Plaintiff *pro se* ("Plaintiff" or "Gunson"); 2) the motion to dismiss, or in the alternative, for summary judgment, filed by Defendants Long Term Care Partners, LLC ("LTCP"), John Hancock Life Insurance Co. ("John Hancock"), and Metropolitan Life Insurance Co. ("MetLife") (Collectively "Private Defendants"); 3) the motion to dismiss, or in the alternative, for summary judgment, filed by Kay Coles James, Director of the United States Office of Personnel Management ("Director James" or "Defendant James"); 4) and Plaintiff's motion to appoint counsel. Plaintiff, a federal annuitant, alleges that Defendants impermissibly denied him long term care insurance coverage in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, Private Defendants' motion for summary judgment is granted, Defendant James's motion for summary judgment is granted, Plaintiff's motions for summary judgment are denied, and Plaintiff's motion to appoint counsel is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A) *The Federal Long Term Care Insurance Program*

The United States Office of Personnel Management ("OPM") established the

Federal Long Term Care Insurance Program ("FLTCIP") pursuant to the Long Term Care Security Act ("LTCSA"), 5 U.S.C. § 9001 *et seq.* The LTCSA directed the OPM to contract with qualified carriers and establish a program whereby federal employees and annuitants, current and retired members of the uniformed services, and their qualified relatives "may obtain long-term care insurance coverage." 5 U.S.C. §§ 9001(1)-(5), 9002(a), 9003.

Congress's intent was to provide families with "affordable options for dealing with the catastrophic expenses of nursing home care, home care, assisted living, and other forms of long-term care services." S.Rep. No. 106–34, 2000 WL 970179 at 29. Long term care refers to "a wide range of health and support services for persons who have lost the capacity for self-care. Long-term care services include home and community-based services as well as those provided in nursing homes and other institutions." S.Rep. No. 106–34, 2000 WL 970179 at 17.

Long term care is not health insurance, nor is it acute care. Long term care is chronic care that an individual may need for the rest of his or her entire life. Health insurance may cover some of the skilled medical services an individual may need when unable to care for himself after an illness or injury. However, such coverage is usually for a limited period and only as long as the individual shows medical improvement. Health insurance plans typically do not cover ongoing chronic care such as extended stay in an assisted living facility or a continuing need for a home health aide to help the individual in day to day living tasks.

The LTSCA directs the OPM to enter into "Master Contracts" with qualified insurance carriers, following competitive bidding. 5 U.S.C. § 9003(a)-(b). Congress mandated that each master contract contain the following: (a) a detailed statement of the benefits offered, including any maximums, limitations, exclusions, and other definition of benefits; (b) the premiums charged; (c) the terms of the enrollment period; and (d) such other terms and conditions agreed to by OPM and the carrier. 5 U.S.C. § 9003(b). Further, the LTSCA also established that each otherwise eligible individual would be responsible for payment of 100 percent of the premiums for such coverage. 5 U.S.C. § 9004(a). Thus, the federal government would not be contributing to this benefit.

Congress recognized that "the costs of issuing policies on a guaranteed basis [would] increase premiums substantially for all enrollees." H.R.Rep. No. 106–610(I), 2000 WL 564093 at 11. Therefore, the LTSCA also states that: "Nothing in this chapter shall be considered to require that long-term care insurance be guaranteed to an eligible individual." 5 U.S.C. § 9002(e)(3).[1] Instead of guaranteed insurance, the LTSCA establishes minimal underwriting standards for master contracts, and delegates the establishment of further underwriting requirements to the qualified carriers and OPM. 5 U.S.C. § 9002(e). Once the qualified carrier has negotiated these underwriting guidelines with OPM, the carrier uses the guidelines to determine the applicants' insurability. This determination is "subject to review only to the extent and in the manner provided in the applicable master contract." 5 U.S.C. § 9003(c)(2).

### B) *Federal Long–Term Care Insurance from LTCP*

LTCP is a joint venture between John Hancock and MetLife formed for the ex-

---

1. Another important distinction is that under the Federal Employees Health Benefits Act, and unlike under the LTSCA, health insurance available to eligible Federal employees and annuitants is in fact offered under a policy of guaranteed issue.

clusive purpose of providing and administering the long term care insurance offered to "eligible individuals" under the LTCSA. Private Defs.' Statement of Material Facts at ¶¶ 1–2. LTCP acts pursuant to a bid package and a "best and final offer" that now functions as the Master Contract between John Hancock and MetLife on the one hand and OPM on the other. Under this Master Contract, all eligible individuals are permitted to apply for long term care insurance from LTCP, the exclusive provider of long term care insurance under the FLTCIP. Id. at ¶¶ 3–4. Each applicant is ultimately approved for either full or alternative coverage or services, as determined by LTCP, based upon standard industry underwriting guidelines established by MetLife and John Hancock and approved by OPM. Id. at ¶¶ 5–6.

Specifically, all applicants are offered at least one of three options. If the applicant is considered fully qualified, he or she is eligible to purchase full long term care insurance from LTCP. If the applicant is not considered fully qualified, LTCP offers the applicant either or both of the following: (1) an Alternative Insurance Plan, which is limited to nursing home coverage and has a 180–day waiting period; or (2) a Service Package that includes access to a care coordinator, referral services, and a discounted network of long term care providers and services. Id. at ¶¶ 6–7. Consistent with the LTCSA, however, regardless of which option is offered to the applicant, the obligation for payment of all insurance premiums and costs lies exclusively with the applicant. Id. at ¶ 7.

According to Peggy Murray ("Murray"), LTCP's Director of Underwriting, LTCP evaluates each application utilizing standard industry underwriting practices and determines if the applicants are eligible for full long term care insurance, the Alternate Insurance Plan or the Service Package. Id. at ¶ 8; Ex. 1. to Murray Cert. Each applicant's medical history is subject to examination in order to determine which type of long term care insurance or services will be provided to that applicant. Private Defs.' Statement of Material Facts at ¶ 8; Ex. 1. to Murray Cert. LTCP does not make any eligibility decisions based upon an applicant's age, and does not make any eligibility determinations based upon whether or not the applicant suffered an injury while on duty or while employed by the federal government. Private Defs.' Statement of Material Facts at ¶¶ 9–10; Ex. 1. to Murray Cert.

### C) *Plaintiff's Application to LTCP for Long–Term Care Insurance*

Plaintiff is currently a retired annuitant of the United States Navy. Pl.'s First Mot. for Summ. J. at ¶ 2. While working in a Naval shipyard in May 1988, Plaintiff injured his left hand. Id. As a result of the May 1988 injury, Plaintiff claims to suffer from "degenerative joint disease," "chronic pain," and "degenerative arthritis." Id. In March or April of 1995, OPM approved Plaintiff's application for disability retirement from the Navy. Id.; Compl. at ¶ 4.

Plaintiff submitted an application for long-term care insurance to LTCP on July 15, 2002. Pl.'s First Mot. for Summ. J. at ¶ 3. At the time of his application, Plaintiff was sixty-two years old. Id. at ¶ 6. LTCP reviewed Plaintiff's application and medical history, including medical orders received from Plaintiff's physician, and ultimately denied Plaintiff's application for full long term care insurance by letter dated October 31, 2002. Private Defs.' Statement of Material Facts at ¶¶ 12, 13, 18. LTCP stated in its denial letter that its decision to deny Plaintiff's application was based on Plaintiff's "medical history of degenerative joint disease with chronic pain." Id. In

fact, "the underwriting guidelines for osteo-arthritis/degenerative arthritis state that moderate to severe osteoarthritis or osteoarthritis with chronic debilitating pain is declinable." *Id.* at ¶ 27 (citing Murray Cert. ¶ 24).

LTCP offered Plaintiff the opportunity to appeal its decision. *Id.* at ¶¶ 14–15. LTCP further informed Plaintiff that he could provide additional medical ·information within four months from the date of the letter to clarify or correct any information cited in LTCP's denial letter of October 31, 2002. *Id.* at ¶ 14. Moreover, LTCP also offered Plaintiff the opportunity to apply for the Service Package and included a brochure and contact information describing the package. *Id.* at ¶ 16. Plaintiff never pursued an appeal or reconsideration of the LTCP's determination.

### D) *Plaintiff's EEOC `Complaint and LTCP's Reconsideration of His Application*

As a result of being denied full long-term care insurance from LTCP, Plaintiff filed a complaint on November 8, 2002, with the Equal Employment Opportunity Commission ("EEOC"), challenging the denial of insurance based on his allegations of age and disability discrimination. Pl.'s Second Mot. for Summ. J. at ¶ 12. On June 28, 2004, the EEOC dismissed Plaintiff's complaint for lack of subject matter jurisdiction. Private Defs.' Statement of Material Facts at ¶ 21.

Following the EEOC Complaint, and notwithstanding the fact that Plaintiff failed to appeal or formally request a reconsideration of LTCP's denial of long term care insurance, LTCP forwarded Plaintiff's application for long term care insurance to the senior underwriters at John Hancock for reconsideration. *Id.* at ¶ 23. The senior underwriters at John Hancock, who were independent reviewers not involved with the first decision, conducted a complete review of Plaintiff's application and his particular situation to determine if LTCP's underwriting guidelines were properly applied. *Id.* at ¶ 24. John Hancock's senior underwriters affirmed LTCP's decision to deny Plaintiff's application for long-term care insurance, and determined that LTCP's denial was solely based upon Plaintiff's medical condition. *Id.* at ¶¶ 23–28.

### E) *Plaintiff's Complaint Filed With This Court*

Plaintiff filed his complaint with this Court on July 14, 2004. In his complaint, Plaintiff alleged that the denial of his long-term care insurance application was discriminatory because it was based on his age and disability and in violation of the ADA and the Rehabilitation Act. Compl. at ¶ 6. Plaintiff has since filed three motions for summary judgment, the first of which was filed on July 30, 2004. On August 31, 2004, Private Defendants filed a motion to dismiss Plaintiff's claim, or in the alternative, a motion for summary judgment. After having filed numerous motions, correspondences and briefs with this Court, on December, 20, 2004, Plaintiff filed a motion to appoint counsel. On December 21, 2004, Defendant Kay Coles James, Director of the United States Office of Personnel Management, filed a motion to dismiss to Plaintiff's claim, or in the alternative, for summary judgment.

## II. DISCUSSION

### A) *Summary Judgment Standard*

█ Private Defendants and Defendant James have framed their motions as motions to dismiss under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56. When making a determination under Rule 12(b)(6), the court cannot consider matters outside of the pleadings. When, as here, both parties present extra-

neous material as part of their motion or opposition, this court has the discretion to accept the extraneous material and convert the motion into one for summary judgment. *Fed.R.Civ.P.* 12(b); *Koernschild v. W.H. Streit, Inc.,* 834 F.Supp. 711, 713 – 714 (D.N.J.1993); *Rose v. Bartle,* 871 F.2d 331, 339–40 (3d Cir.1989); *Wiley v. Hughes Capital Corp.,* 746 F.Supp. 1264 (D.N.J.1990); *Elysian Federal Savings v. First Interregional Equity,* 713 F.Supp. 737, 740 (D.N.J.1989); 5 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1366 at 678 (West 1969 & Supp. 1989). Because the Court has relied on matters outside the pleadings, it will address the instant motions filed by Defendants as motions for summary judgment.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To avoid summary judgment the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. A genuine issue of material fact is one that will per-

mit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating the evidence, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party." *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002) (quoting *Bartnicki v. Vopper,* 200 F.3d 109, 114 (3d Cir.1999)). Conclusory allegations do not meet the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists and a reasonable factfinder could rule in its favor. *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir.1999).

### B) Plaintiff's ADA and Rehabilitation Act Claims

In Plaintiff's Complaint, he asserts a claim against Defendants alleging that he was discriminated against in violation of the American with Disabilities Act and the Rehabilitation Act when he was denied long-term care insurance. Compl. at ¶ 5. While Plaintiff does not identify in his Complaint the specific section or title of the ADA or Rehabilitation Act[2] under which he asserts his claim in his complaint, Plaintiff states throughout his complaint, subsequent motions for summary judgment[3] and other correspondences, that he

---

**2.** In Plaintiff's second and third motions for summary judgment, Plaintiff asserts a claim under the "Rehabilitation Act, 29 U.S.C. § 794 *et seq.*"

**3.** To the extent that Plaintiff argues in favor of conducting additional discovery in this matter, such an argument must fail. First, a party seeking to take discovery in response to a summary judgment motion ordinarily must demonstrate: (1) the particular information sought; (2) how the information would preclude summary judgment; and (3) why it has not previously been obtained. *Pastore v. Bell Tel. Co. of Pa.,* 24 F.3d 508, 511 (3d Cir.1994); *Krouse v. Am. Sterilizer Co.,* 984 F.Supp. 891,

915–16 (W.D.Pa.1996); 47 A.L.R. Fed. 206 (citing *Washington v. Allstate Ins. Co.,* 901 F.2d 1281 (5th Cir.1990) (Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete; rather, the opposing party must demonstrate "how the additional time will enable him to rebut the moving party's allegations of no genuine issue of fact")). Here, Plaintiff does not identify the particular information he is seeking or how it would preclude summary judgment. Second, Plaintiff has filed three motions for summary judgment of his own, thereby indicating that he also believes that his case is ripe for disposition.

is suing for employment discrimination. *See, e.g.,* Compl. at ¶¶ 3, 5; Pl.'s First Mot. For Summ. J. ¶¶ 4, 24. Moreover, Plaintiff was eligible to apply for the coverage that is the subject of his complaint because of his past employment with the United States Navy. Only Title I of the ADA, 42 U.S.C. §§ 12111–12117, those provisions of Title IV applicable to Title I, 42 U.S.C. §§ 12201–12213, and Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, pertain to employment discrimination. In addition, Plaintiff frequently refers to the "reasonable accommodation" language used in Title I. Therefore, Plaintiff's claim must properly be read as seeking relief pursuant to Title I of the ADA and Section 501 of the Rehabilitation Act.[4] Courts use the same standards for determining whether there has been a violation of the Rehabilitation Act as they use for determining whether there has been a violation of Title I of the ADA. *See* 29 U.S.C. §§ 791(g), 794(d).

### 1) Title I of the ADA

Title I of the ADA provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111.

■ Here, Plaintiff has repeatedly maintained, throughout his complaint, motions and numerous correspondences, that "Defendants failed to provide a 'reasonable accommodation' when they denied Plaintiff from enjoying all of the benefits and privileges of his employment" and that "the ADA and Rehabilitation Act ensures [sic] that the disabled employee will enjoy all of the benefits of both younger and non-disabled employees." Pl.'s Br. In Response, Oct. 21, 2004 at ¶ 24; Pl.'s Trial Br., Oct. 12, 2004 at ¶ 16. While Plaintiff repeatedly refers to himself as an "employee," he also states that he was approved for "disability retirement in April 1995," currently receives "a disability award," and speaks

---

4. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §§ 12132. By statute, "public entity" means "any State or local government"; "any department, agency, special purpose district, or other instrumentality of a State or States or local government"; and "the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1)(A)-(C). Because not a single Defendant here is a "public entity" as defined by 42 U.S.C. § 12131, Title II is inapplicable here.

Title III of the ADA states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). According to the Third Circuit, "[t]he plain meaning of Title III is that a public accommodation is a place." *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 612 (3d Cir.1998). In *Ford,* the Third Circuit held that the plaintiff failed to state a claim under Title III where the plaintiff "received her … benefits via her employment … [and] … had no nexus to [the] 'insurance office' and thus was not discriminated against in connection with a public accommodation." *Id.* at 613. Here, because Plaintiff was denied long term care in connection with his employment and has no "nexus" to any public accommodation, Title III is also inapplicable.

often of his "physical inability to perform the duties of [his] work" with the Navy. Pl.'s First Mot. For Summ. J. at ¶ 2; Pl.'s Br. In Response, Oct. 21, 2004 at ¶¶ 3–4.

Plaintiff misunderstands the language of Title I of the ADA and has misconstrued the facts of his case. On one hand, Plaintiff admits he is disabled for the purpose of receiving a disability retirement annuity. On the other hand, Plaintiff speaks as though he is an active Federal employee when he invokes the language of Title I and argues that Defendants failed to provide him with a "reasonable accommodation." The "reasonable accommodation" framework is simply inapplicable here, where Plaintiff has maintained that he would be unable to perform his duties with the Navy regardless of any possible accommodations with which the Navy could provide him. Pl.'s Third Mot. For Summ. J. at ¶ 6. Furthermore, Plaintiff has been paid a disability retirement annuity by the Federal Government for almost ten years. Plaintiff cannot argue simultaneously that he is disabled and collecting disability retirement benefits and yet argue that he is being denied benefits of employment available to active Federal employees.

Plaintiff also states that the ADA "protects disabled employees[5] from dispalate [sic] treatment by their employers on the basis of their disability (employment)." Pl.'s Mot. For Summ. J. at ¶ 6. In *Ford*, the Third Circuit held that the defendants' insurance plan did not discriminate under Title I because "[e]very ... employee had the opportunity to join the same plan with the same schedule of coverage, meaning that every ... employee received equal treatment." Differentiating between types of disabilities "is a far cry from a specific disabled employee facing differential treatment due to her disability." *Ford*, 145 F.3d at 608. The court further stated that:

So long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities. The ADA does not require equal coverage for every type of disability; such a requirement, if it existed, would destabilize the insurance industry in a manner definitely not intended by Congress when passing the ADA. *Id.*

▉ Here, LTCP permissibly denied Plaintiff's application for long term care insurance when it did so based on his medical history. Def. Private Defs.' Statement of Material Facts at ¶¶ 12, 13, 18. Nothing prevented Plaintiff from applying for long term care insurance, and LTCP treated Plaintiff in the same manner that it treats all other similarly situated applicants. *See Ford*, 145 F.3d at 608. Moreover, the LTCSA expressly states that long term care coverage is not guaranteed. 5 U.S.C. § 9002(e)(3). Plaintiff is clearly aware that such coverage is not guaranteed, as evidenced by his statement, "[t]he Plaintiff does concur the 'FLTSCA' which is recent legislation to make available for purchase long term care insurance does not guarantee coverage to anyone, but only if said coverage denial does not violate existing legal authorities." Pl.'s Br. In Response, Oct. 21, 2004 at ¶ 46. Therefore, Plaintiff was not discriminated against by LTCP when it denied his application, and Plaintiff's ADA and Rehabilitation Act claims must fail. Additionally, it is undisputed that the OPM took no action with regard to Plaintiff's individual application, and to the extent that Plaintiff asserts any claims against Defendant James based on OPM's vicarious liability for LTCP's alleged discrimination, those claims must also fail.

---

**5.** Of course, Plaintiff is no longer an employee of the Navy.

### 2) Safe Harbor Provision

Assuming *arguendo* that Plaintiff can pursue an ADA and Rehabilitation Act claim against the Private Defendants and Defendant James, the ADA's "safe harbor" provision covering the insurance industry is an important exception to Title I of the ADA and the Section 501 of the Rehabilitation Act[6] and is relevant here. Section 501(c) of the ADA contains the safe harbor provision, which is codified at 42 U.S.C. § 12201(c) and reads as follows:

(c) Insurance

Subchapters I through III of this chapter and title IV of this Act shall not be construed to prohibit or restrict—

(1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance. Paragraphs (1), (2), and (3) shall not be used as a *subterfuge* to evade the purposes of subchapter [sic] I and III of this chapter. 42 U.S.C. § 12201(c) (emphasis added).

Here, there is no dispute that the FLTCIP is a covered and bona fide benefit plan under the ADA, nor is there an allegation that the program violates state law. Thus, Plaintiff's ADA and § 501 Rehabilitation Act claims can survive only if Plaintiff can show that the FLTCIP functions as a subterfuge to evade the purposes of the ADA or Rehabilitation Act or that LTCP's decision was a subterfuge for evading the ADA or Rehabilitation Act.

In *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), the Supreme Court concluded that the term "subterfuge" must be given its ordinary meaning of "a scheme, plan, stratagem, or artifice of evasion." 492 U.S. at 167, 109 S.Ct. 2854. According to the Court, "[W]hen an employee seeks to challenge a benefit plan provision as a subterfuge[,] ... the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation." *Betts,* 492 U.S. at 181, 109 S.Ct. 2854.

In *Ford v. Schering–Plough Corp.,* 145 F.3d 601 (3d Cir.1998), the Third Circuit adopted the Supreme Court's interpretation of the term "subterfuge" in *Betts.* 145 F.3d at 611. The Third Circuit also recognized that nothing in the ADA's safe harbor provision requires insurance companies to "justify their insurance plan." *Id.* Moreover, there is no requirement that Defendants produce any actuarial analysis to justify their underwriting decisions or to disprove a plaintiff's charge of "subterfuge." *See id.* at 612. The *Ford* court added that the ADA does not "specifically relate to the business of insurance and

---

**6.** The Safe Harbor provision is applicable to Section 501 of the Rehabilitation Act pursu-ant to 29 U.S.C. § 791(g).

does not mention the term insurance in its introductory section entitled Findings and purpose." *Id.* (internal quotations omitted).

Here, there is no evidence suggesting that LTCP or the FLTCIP have acted or functioned in a manner based upon a scheme or intent to evade the ADA or Rehabilitation Act. Instead, Plaintiff conclusorily argues that Defendants "discriminated against him based on his age (62) and disability (physical) when he was denied a benefit of his employment offered to younger non-disabled employees (the Long Term Care Insurance). This [is] in violation of the Provisions and Statutes enforced by law of the [ADA] and the Rehabilitation Act." Pl.'s First Mot. For Summ. J. at ¶ 6. However, all decisions with respect to Mr. Gunson's application for long term care insurance were based upon standard, industry underwriting guidelines, and were consistent with the OPM's original bid requests and the LTCSA itself, which both recognize that not each and every eligible individual would be guaranteed full long term care insurance. *See* Murray Certification, Ex. 1; 5 U.S.C. § 9002(e)(3). Plaintiff's medical condition and history of chronic pain simply place him at too high of a risk to require long term care in the future. *See* Private Defs.' Statement of Material Facts, ¶ 28. No subterfuge exists here. Therefore, even assuming *arguendo* that Plaintiff can pursue ADA and Rehabilitation Act claims against the Private Defendants and Defendant James, those claims must all fail because of the existence of the ADA's safe harbor provision for insurance.[7]

### C) *Plaintiff's Age Discrimination Claim*

■ In his complaint and subsequent motions, Plaintiff also asserts that he was discriminated against on the basis of his age, which at the time of his application was sixty-two. Plaintiff cites to no statute or law in support of his claims of age discrimination other than the ADA and Rehabilitation Act, which do not discuss age discrimination. Rather, in support of his allegation, Plaintiff quotes a statement from Laura Lawrence ("Lawrence"), an OPM employee involved in the FLTCIP, that statistically, a higher percentage of older applicants to the FLTCIP are denied enrollment because as people get older their health declines. Pl.'s Second Mot. Summ J at ¶ 14. Of course, Plaintiff also alleges that he is the victim of "dispalate treatment" at the hands of Defendants.

The disparate treatment theory is also available under the Age Discrimination in Employment Act ("ADEA"), as the language of that statute makes clear. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). According to the ADEA: "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. *Hazen Paper Co.,* 507 U.S. at 610, 113 S.Ct. 1701.

---

**7.** In Plaintiff's second and third motions for summary judgment, Plaintiff asserts a claim under the "Rehabilitation Act, 29 U.S.C. § 794 *et seq.*" Because the safe harbor provision of the ADA is also applicable to Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. § 794(d), any claim that Plaintiff asserts under the "Rehabilitation Act, 29 U.S.C. § 794 *et seq.*" must also fail.

■ First, Lawrence's statement, which was a general statement that had nothing to do with Plaintiff's application, does not state that age is a factor in the underwriting process. Second, Lawrence, the OPM, and Defendant James had nothing to do with the decision to deny Plaintiff's application for long term care. LTCP was responsible for the disposition of Plaintiff's application. As such, Lawrence's statement is of no import in this context. Third, Plaintiff is no longer employed by the Navy. Therefore, to the extent that Plaintiff's complaint asserts an age discrimination claim against the Private Defendants and Defendant James through vicarious liability, this claim must also fail.[8]

### D) *Plaintiff's Motion to Appoint Counsel*

On December 20, 2004, after filing three motions for summary judgment and numerous correspondences, Plaintiff filed a motion to appoint counsel. Plaintiff maintains that he does "not have or cannot afford the services of an attorney" and "request[s] that the Court appoint an attorney to represent [him] in the event of a trial and that the Court provide [him] with an attorney without payment of fees, costs, or other security this pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000E et seq."

Indeed, Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.2000e–5(f)(1)), provides for appointment of counsel in Title VII cases in certain limited circumstances. That statute provides in pertinent part: "Upon application by the complainant and in such circumstances as the court May deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the prepayment of fees, costs, or security."

■ It is well established that indigent civil litigants do not possess a statutory or constitutional right of counsel. *See Parham v. Johnson,* 126 F.3d 454, 456–57 (3d Cir.1997). However, district courts have the discretion to appoint counsel under 28 U.S.C. § 1915(e), which provides that a court may request[9] an attorney to represent any such person unable to afford counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious, or if the plaintiff fails to state a claim on which relief may be granted, or if the plaintiff seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e); *Montgomery v. Pinchak,* 294 F.3d 492, 498 (3d Cir. 2002). District courts may utilize this power to appoint counsel at the request of the plaintiff or may do so *sua sponte* if the

**8.** Plaintiff's complaint specifically alleges violations of only the ADA and Rehabilitation Act. However, in Plaintiff's first motion for summary judgment, he states: "The Plaintiff argues by this motion that it is not possible for the [OPM] to be uninvolved in individual underwriting decisions or to allow underwriting decisions to belong solely to an agent of its contractors, [LTCP]." Thus, Plaintiff's "argument" may be construed as challenging the OPM's promulgation of a rule delegating responsibility for making insurability decisions to LTCP pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* Assuming *arguendo* that no exceptions to judicial review apply and that Plaintiff has not

abandoned this claim, this claim too must fail, because Plaintiff fails to make any allegations that the OPM's decision was arbitrary, capricious, or an abuse of discretion pursuant to the APA. 5 U.S.C. § 706(2)(A); *Alaska Dep't. of Environmental Conservation v. E.P.A.,* 540 U.S. 461, 124 S.Ct. 983, 1006, 157 L.Ed.2d 967 (2004).

**9.** The district courts have the power to "request" counsel for a civil litigant, but they lack to the power to "require" an unwilling attorney to serve as counsel. *See Mallard v. United States Dist. Court for Southern Dist. of Iowa,* 490 U.S. 296, 301–02, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989).

court finds appointment appropriate as the case moves forward.[10]

 Generally, the Third Circuit has interpreted § 1915 to grant district courts broad discretionary power in determining whether counsel should or should not be appointed. *Tabron v. Grace*, 6 F.3d 147, 153–55 (3d Cir.1993) (holding that neither the language of the statute nor its legislative history "suggests that appointment is permissible only in some limited set of circumstances"). According to the Third Circuit, in order for a court to exercise its broad discretion and appoint counsel, the plaintiff first must demonstrate that his or her case has "some merit in fact and law." *Montgomery*, 294 F.3d at 499 (citing *Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir.1997)); *Tabron*, 6 F.3d at 155.

 At the summary judgment stage, a plaintiff satisfies this threshold "where the conduct alleged ... clearly state[s] a non-frivolous, *prima facie* case" and "the already established evidence indicates more than and 'extremely slim' chance of success on the merits." [11] *Montgomery*, 294 F.3d at 499–500. Here, because the Court has already assessed the merits of Plaintiff's and determined that all of his claims cannot survive Defendants' motions for summary judgment, Plaintiff's motion to appoint counsel must be denied.[12]

**10.** "[W]e emphasize that appointment of counsel under [section 1915] may be made at any point in the litigation and may be made by the district court *sua sponte.*" Accordingly, even if it does not appear until trial (or immediately before trial) that an indigent litigant is not capable of trying his or her case, the district court should consider appointment of counsel at that point. *Tabron*, 6 F.3d 147, 156–57 (citations omitted).

### III. CONCLUSION

Based on the reasons set forth above, the motion for summary judgment filed by Defendants Long Term Care Partners, LLC, John Hancock Life Insurance Co., and Metropolitan Life Insurance Co. is granted, the motion for summary judgment filed by Defendant Kay Coles James is granted, Plaintiff's motions for summary judgment are denied, and Plaintiff's motion to appoint counsel is denied. Plaintiff's case is now closed.

### ORDER

This matter having been opened to the Court on 1) the three motions for summary judgment filed by James R. Gunson, Plaintiff *pro se;* 2) the motion to dismiss, or in the alternative, for summary judgment, filed by Peter L. Frattarelli, Esq., attorney for Defendants Long Term Care Partners, LLC, John Hancock Life Insurance Co., and Metropolitan Life Insurance Co. (Collectively "Private Defendants"); 3) the motion to dismiss, or in the alternative, for summary judgment, filed by Louis J. Bizzari, Esq., Assistant United States Attorney, attorney for Defendant Kay Coles James, Director of the United States Office of Personnel Management; 4) and the motion to appoint counsel filed by James R. Gunson, Plaintiff *pro se;* the Court having considered Private Defendants' moving papers and opposition, Defendant James's moving papers, and Plaintiff's moving papers, correspondences, and

**11.** Policy considerations discourage appointment of counsel in frivolous or unmeritorious cases because a lawyer's time is so valuable and the demand for appointed attorneys far exceeds the supply. *See e.g., Montgomery*, 294 F.3d at 499; *Parham*, 126 F.3d at 458.

**12.** That Court notes that affording Plaintiff a further opportunity to take discovery would be unavailing because Plaintiff simply cannot state a claim, and has not identified any discovery he would seek.

briefs; this matter having been considered pursuant to *Fed.R.Civ.P.* 78; for the reasons expressed in the Court's Opinion filed herewith; and for good cause shown,

IT IS on this *12th* day of January, 2005,

**ORDERED** that Plaintiff's motions for summary judgment are **DENIED.**

**ORDERED** that the motion for summary judgment filed by Defendants Long Term Care Partners, LLC, John Hancock Life Insurance Co., and Metropolitan Life Insurance Co. is **GRANTED.**

**ORDERED** that the motion for summary judgment filed by Defendant Kay Coles James is **GRANTED.**

**ORDERED** that Plaintiff's motion to appoint counsel is **DENIED.**

**ORDERED** that the Clerk's Office shall mark the case as **CLOSED.**