**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3069
_____

MARLON MCDOUGALL,
Appellant

v.

LIEUTENANT TYSON; NURSE FREELAND; GEO GROUP INC., Detention Center

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3:23-cv-00091)
Magistrate Judge: Honorable Keith A. Pesto

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 1, 2025
Before: KRAUSE, PHIPPS, and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 2, 2026)
_____

OPINION[*]
_____

PER CURIAM

     Marlon McDougall appeals *pro se* and *in forma pauperis* from the District Court's

order granting summary judgment to the operator of an immigrant detainee processing

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

center for injuries he sustained while in its custody. We will vacate and remand with instructions that the District Court reassess McDougall's requests for counsel under the appropriate standards.[1]

I.

McDougall was admitted to the United States in 1982 as a lawful permanent resident. He was incarcerated from 2006 to 2022 following a conviction in Virginia. Upon the completion of his sentence, the United States Department of Homeland Security obtained custody of McDougall and initiated removal proceedings. McDougall was detained at Moshannon Valley Processing Center ("MVPC") in Clearfield County, Pennsylvania, from August 2022 until April 2023. A preexisting injury (torn meniscus) left him wheelchair-bound throughout his time at MVPC.

In May 2023, McDougall filed a complaint in the United States District Court for the Middle District of Pennsylvania against The GEO Group, Inc., the company that operates MVPC, and two of the facility's employees, Lieutenant Tyson and Nurse Freeland (given names unknown); the case was quickly transferred to the Western District. McDougall did not identify a specific cause of action in the body of his complaint, though he checked a box on the cover page identifying the basis for his claim as "Civil Rights Action under 42 U.S.C. § 1983," and he attached a separate page alerting the Clerk's Office that he was filing a "Civil Complaint for Prisoner Rights Violation, Civil Rights." See ECF Doc. 1 at 1, 7. The crux of McDougall's complaint is that, in

---

[1] We express no opinion on what the outcome of this inquiry should be.

2

early April 2023, Tyson dropped him on the ground "outside [of] the sally-port of the intake" at MVPC while attempting to move him from a wheelchair to a van that was being used to transfer him and other detainees to Pike County Correctional Facility. See id. at 4. McDougall, who was handcuffed at the time, claims that the fall "overstressed" his injured meniscus and hindered his recuperation. See id. at 5.[2]

McDougall later supplemented his averments with his own declaration and that of another detainee who witnessed the incident, both of which describe more clearly the events leading to McDougall's fall. After handcuffing McDougall, chaining him at the waist, and shackling his feet, Tyson and two unnamed "officers" allegedly informed McDougall that they were going to pick him up out of the facility-issued wheelchair and put him in the van, which already was occupied by "6 or 8" other detainees. See ECF Docs. 39-1, 39-2. McDougall protested that his medical records require that he be transported in a handicap-accessible vehicle, as he had been every other time he left MVPC, but Tyson supposedly denied knowing anything about that. McDougall says he insisted that Tyson check his records to no avail. The three officers dropped McDougall

---

[2] The complaint also includes a grievance about the wheelchair provided to McDougall, the precise nature of which is difficult to discern. McDougall alleges that Freeland took possession of the wheelchair he had been using upon his arrival at MVPC the previous August and replaced it with one owned by the facility. See ECF Doc. 1 at 4. He then says that, on the day of the incident, Tyson "attempted to retrieve a wheelchair" that McDougall "desperate[ly] need[ed]," "claim[ing] that it belonged to the facility," but failed to return McDougall's original wheelchair and dismissed his inquiry about it. See id. ("Lt. Tyson, when informed of my original wheelchair being in the facility, stated that he did not care where the wheelchair was.").

3

while carrying him to the vehicle, causing him to strike the ground and cry out in pain. They then wheeled him back into the facility, where he purportedly received no treatment for his injuries. He was driven to Pike County in a wheelchair-accessible vehicle a few hours later. Once there, he claims he saw an emergency room doctor who told him he had reinjured his knee[3] and had four bulging discs in his back, which required 11 physical therapy sessions "just to get back on track." See id.

Significant here, throughout the litigation, McDougall repeatedly asked the District Court[4] to appoint counsel to assist him. See ECF Docs. 9, 22, 25, 38, 46. Relying exclusively on Rule 10.C of the Western District's Local Civil Rules—which provides that, "[a]bsent special circumstances, no motions for appointment of counsel will be granted until after dispositive motions have been resolved"—the court denied each motion. See ECF Docs. 10, 27, 48 (concluding that McDougall's confinement was not a special circumstance); see also Doc. 40 (adding that McDougall's lack of legal training, limited education, and health issues did not prevent him from "present[ing] his factual position clearly in [his] declaration"). McDougall independently solicited the help of private counsel without success. See ECF Doc. 25 at 2-4 (identifying 10 law firms contacted).

---

[3] McDougall now refers to it as an ACL tear.

[4] United States Magistrate Judge Keith A. Pesto, acting with the parties' consent. See 28 U.S.C. § 636(c).

4

Given the uncertain nature of McDougall's cause of action, GEO assumed he was alleging deliberate indifference to medical needs and moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a Monell[5] claim. The court denied the motion. It assumed that McDougall was alleging negligence under Pennsylvania tort law, not a constitutional violation under Section 1983, and thus could make out a claim against the company on a theory of *respondeat superior*. **See ECF Doc. 27 at 2-3.**

GEO then moved for reconsideration, asserting that the court would lack jurisdiction if McDougall's complaint arose solely under Pennsylvania law because all the parties "resid[e] in Pennsylvania." See ECF Doc. 28 ¶ 2. The company urged the court to construe the complaint as raising a constitutional claim for deliberate indifference, which it maintained was deficient under Monell. The court granted GEO's motion in part and, to aid its jurisdictional assessment, directed McDougall to file a document stipulating to his nationality, immigration status, domicile, the amount in controversy, and whether he intended to proceed with his claims against Tyson and Freeland.[6] McDougall complied. He stipulated that he is a citizen of Guyana and a permanent resident of the United States; that he was last domiciled in Washington, D.C.,

---

[5] Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658 (1978).

[6] The court gleaned from GEO's website and litigation history that it is a Florida company.

before his incarceration; and that he sought more than $75,000 for his injuries. He also agreed to voluntarily dismiss the individual defendants.

Because McDougall answered the court's questions without challenging their premise—*i.e.*, that he had merely brought a standard negligence claim for which the court needed to establish that it had diversity jurisdiction—the court and GEO proceeded as if that was the only claim at issue. GEO did not contest jurisdiction, but instead sought a second bite at dismissal because it believed McDougall had to file a certificate of merit under Pennsylvania Rule of Civil Procedure 1042.3. The court denied the motion, explaining that, unlike professional medical negligence claims, run-of-the-mill tort claims like McDougall's do not require certification. However, the court advised McDougall that he might "need an expert to prove causation of some of his injuries." See ECF Doc. 44 at 2.

The parties proceeded to discovery, during which McDougall moved for a hearing and sought a subpoena for the surveillance footage of the incident and the names of the two officers who assisted Tyson. The court denied his motions in February 2024, but prompted GEO to consider the request as one for production and an interrogatory and to respond to him directly. McDougall renewed his demand for the video and added a request for the facility's policies regarding transporting disabled individuals and for statements from MVPC employees, he then moved to compel their production, GEO rejoined that the motion was premature and that it had until the end of May to respond. The court agreed and denied McDougall's motion via docket order.

6

McDougall filed a second motion to compel in mid-June because he had not yet received the requested items. GEO responded that it had answered McDougall's request a few days before the deadline; it offered to resend its answers in the event he never received them. The company attached a letter dated May 24, 2024, and addressed to McDougall at Caroline Detention Facility in Bowling Green, Virginia, ostensibly notifying him that its answers were enclosed.[7] The court denied McDougall's motion in its September 24, 2024 opinion granting GEO's motion for summary judgment, tersely noting that, after GEO filed its response, the court had received "[n]othing further indicating that [McDougall] did not receive the discovery." See ECF Doc. 64 at 2.

Amidst the discovery imbroglio, GEO moved for summary judgment on the grounds that McDougall failed to exhaust administrative remedies, sued the wrong party, and proffered no evidence of his injuries or their cause. McDougall did not formally respond to GEO's motion; instead, he filed one of his own. Comprising just six sentences without an accompanying brief or statement of facts, McDougall's motion pointed to the declarations and asserted that GEO possessed video evidence but had not yet produced it in discovery. The court granted GEO's motion and entered judgment in its favor. Although it rejected the company's first two grounds for relief, the court ultimately agreed that McDougall had failed to present evidence of his injuries beyond his allegations or competent proof linking them to the incident.

---

[7] GEO's answers do not appear in the record, and it is unclear whether it ever sent McDougall a copy of the video he requested, or if one exists.

7

McDougall filed an "objection" to the court's decision, contending that he may not have received discovery or responded to requests because he had changed facilities four times that year, and reiterating that he could have produced medical records if he had been appointed counsel. See ECF Doc. 67 at 1; see also ECF Docs. 33, 35, 47 (change-of-address notices). The court construed McDougall's filing as a motion to alter or amend judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure and denied it, telling him that he could seek review of the court's orders denying him counsel from this Court.

McDougall appeals. The parties were directed to address whether the District Court abused its discretion in repeatedly denying McDougall's motions for counsel without considering the factors set forth in Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993). They have dutifully complied.

II.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of a motion to appoint counsel for abuse of discretion. See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019). Under 28 U.S.C. § 1915(e)(1), a court "may request an attorney to represent any person unable to afford counsel." As a threshold matter, the court must consider whether the complaint has arguable merit. See Tabron, 6 F.3d at 155. If so, the court must consider a number of additional factors, including the complainant's ability to present his own case, his ability to retain his own counsel, and

8

the complexity of the legal issues. See id. at 155-56; Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997).

III.

McDougall challenges the District Court's refusal to appoint him counsel. GEO defends that decision[8] and the court's grant of summary judgment. It is not surprising that the District Court granted GEO's motion on this record. Setting aside whether footage of the incident exists, it is undisputed that McDougall did not proffer competent medical evidence substantiating his purported injuries or connecting them to his being dropped. Those evidentiary shortcomings might be fatal to an appeal under normal circumstances. But here they may simply have been the inevitable consequence of compounding judicial error.

The District Court relied exclusively upon a local rule—Western District Local Civil Rule 10.C—requiring a showing of "special circumstances" when it denied McDougall's requests for an attorney. The court did not mention, much less consider, the

---

[8] GEO concedes that there may be "a conflict" between the Western District's local rule and the statute governing appointment of counsel for indigent defendants. See C.A. Doc. 20 at 24. The company does not dispute that the District Court failed to consider the Tabron factors, but rather suggests that McDougall "likely waived" his challenge because he did not timely object under Federal Rule of Civil Procedure 72. See id. at 18 n.6. Rule 72 requires a party to file objections to a magistrate judge's orders on non-dispositive matters within 14 days to preserve them for review by a district judge. See FED. R. CIV. P. 72(a). The rule's preservation requirements do not apply when parties consent to a magistrate judge's jurisdiction, as here. Magistrate Judge Pesto rightly instructed McDougall that he could appeal the court's adverse rulings on his requests for counsel to this Court within 30 days pursuant to Rule 4 of the Federal Rules of Appellate Procedure. McDougall has satisfied that jurisdictional prerequisite.

9

factors enumerated by this Court in <u>Tabron</u>, in which we rejected conditioning appointment of counsel upon proof of "exceptional circumstances." <u>See</u> <u>Tabron</u>, 6 F.3d at 155. The only factor the District Court assessed when denying McDougall's first three motions was the bare fact of his confinement. The court briefly listed McDougall's indigency,[9] lack of legal training or education, and health issues when denying his fourth motion, but found that his ability to "present his factual position clearly" in a declaration outweighed these other limitations. <u>See</u> ECF Doc. 40. And the court merely referred back to its previous orders in denying McDougall's fifth motion, even though he

---

[9] GEO asserts that McDougall "was not an indigent civil litigant" because he "was not granted leave to proceed *in forma pauperis*" in the District Court. <u>See</u> C.A. Doc. 20 at 18. The District Court denied McDougall's IFP petition in June 2023 on the grounds that he had sufficient funds in his inmate account to cover the filing fee and costs of service at that time. McDougall disputes the accuracy of that accounting in his brief to this Court, and he has supplied us with more extensive documentation reflecting the meager sums at his disposal in prison dating back to early 2024. In any event, the District Court did not deny McDougall's motions for want of proof of his poverty. And the denial of IFP status is not dispositive on the question of indigency in connection with a request for counsel; indeed, the standards are different for obvious reasons. <u>Compare</u> 28 U.S.C. § 1915(a), <u>with</u> <u>id.</u> § 1915(e)(1).

The company also contends that McDougall did not cite his indigency until his fourth motion, and then "wholly abandoned" that argument in his fifth. <u>See</u> C.A. Doc. 20 at 18-20. To the contrary, McDougall cited his "very limited resources" as just "one of the many" reasons he sought court-appointed counsel in his third motion, <u>see</u> ECF Doc. 25 at 1, before reiterating his lack of income and inability "to afford counsel" in his fourth motion, <u>see</u> ECF Doc. 38 ¶ 1. In his final request—a handwritten document just three sentences long—McDougall professes that he is unsure how to present "a lot of things" and "do[es] not want to mess this up." <u>See</u> ECF Doc. 46. GEO characterizes that pithy submission as the willful abandonment of an essential argument. We do not fault McDougall for his brevity given the fate of his earlier, more fulsome requests. We have reviewed the record *in toto* in resolving this appeal.

presented a new circumstance—limited access to a law library—that the court had not previously evaluated. See ECF Docs. 46, 48.

The District Court plainly did not consider certain "significant factors," see Tabron, 6 F.3d at 155-56, like the arguable merit of McDougall's negligence claim,[10] which is fairly straightforward, or the unusual constraints placed upon him as an immigrant detainee, including his involuntary relocation to four detention facilities across two States in less than a year. The court never discussed McDougall's ability to pursue an investigation, properly gather evidence, or comply with his own discovery obligations despite recurring issues he raised about obtaining surveillance footage and identifying witnesses. See id. at 156. Nor did the court weigh the likelihood that McDougall could identify and secure an expert witness on his own, even after recognizing the necessity of an expert "to prove causation" under the circumstances. See ECF Doc. 44 at 2; see also Tabron, 6 F.3d at 156 ("[A]ppointed counsel may be warranted where the case will require testimony from expert witnesses."). In light of these omissions, we conclude that the District Court abused its discretion in denying McDougall's request for counsel.

Accordingly, we will vacate the District Court's judgment and remand with instructions to reconsider McDougall's request under the proper standards.[11]

---

[10] Like the District Court, we disagree with GEO's contention that McDougall "clearly brings only federal claims." See C.A. Doc. 20 at 21 n.8. Whether McDougall can state a claim under Section 1983 or Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), at the very least his complaint encompasses a negligence tort under Pennsylvania law. The parties should seek clarification of the applicable causes of action on remand.

[11] Judge Phipps would affirm the District Court's judgment on the grounds that

11



McDougall did not challenge the Magistrate Judge's order denying IFP status and, without IFP status, McDougall had no claim to the appointment of counsel.